DEVENDORF et al., Appellants,

v.

AKBAR PETROLEUM CORPORATION et al., Appellees.

[Cite as *Devendorf v. Akbar Petroleum Corp.* (1989), 62 Ohio App.3d 842.]

Court of Appeals of Ohio,
Summit County.

No. 13800.

Decided May 17, 1989.

*Joan A. Devendorf,* for appellants.
*John N. Teeple,* for appellees.

BAIRD, Judge.

This cause came before the court upon the appeal of David S. and Joan Devendorf from the portion of the trial court's order refusing to enjoin the use of an area which included five lots subject to restrictive covenants for the purpose of establishing the minimum acreage requirements for oil well drilling.

David and Joan Devendorf own a tract of land situated in Lot 54 of Bath Township. Their land is part of a forty-acre unplatted residential tract which was originally conveyed as a single parcel in a 1949 deed. This deed contained the following language:

" * * * [A]s a part of the consideration for this conveyance and for the protection of the grantor it is agreed as covenants running with the land that the grantees, their heirs and assigns shall use the premises hereby conveyed solely for private residence and agricultural purposes and that no commercial or industrial business shall be conducted thereon. * * * "

The deed by which the Devendorfs received their property referred to the restriction contained in the earlier deed but did not itself contain any restrictions. The Devendorfs' property is situated just outside an area that is being developed for oil and gas drilling.

William Tipka, a gas and oil developer, executed oil and gas leases with various landowners whose lots adjoin the Devendorfs' property in order to attain the proper acreage necessary for drilling purposes. Tipka executed an oil and gas lease with Richard and Jean Griffith in order that a well could be located on the lot designated as Griffith Lot 1. Griffith Lot 1 was not subject to any use restrictions. The other two lots owned by the Griffiths, Lots 2 and 3, were also covered by the lease even though no actual drilling would be conducted on them. Griffith Lots 2 and 3 were subject to the following restriction:

"The premises hereby conveyed shall be used for private residential and agricultural purposes only.

"No more than two single family private residences shall be built upon the premises hereby conveyed."

The two lots were originally part of the same forty-acre tract which also included the Devendorfs' lot.

Tipka procured a nondrilling oil and gas lease from Akbar Consulting Corp., which owned Akbar Lots 1 and 2. The two lots were located in the forty-acre residentially restricted tract. The deeds to these lots contain the following restrictions:

"1. No business of any type, whether commercial, retail, manufacturing or otherwise shall be conducted upon the above described premises.

"2. The premises hereby conveyed shall be used for private single family residence purposes only and only four such residences may be erected thereon."

While no drilling was permitted on the land, a buried transportation pipeline could be constructed under the property. As was the case with the other lessors, Akbar would receive a one-eighth royalty.

Tipka entered into another oil and gas leasing arrangement with Leonard A. Keller who owned property designated as the Keller Lot. The deed used the same restrictive language employed in the deeds for Akbar Lots 1 and 2. Tipka received oil and gas leases from three other landowners who are not the subject of this appeal. All of the leases contained pooling clauses which authorize Tipka to combine the leased properties for purposes of creating an operating unit. Most of the leases provided that the lessor would also have free use of oil or gas extracted from the well. To comply with state-mandated minimum acreage requirements, Tipka consolidated the leased properties. Under the consolidation agreement, the leased lands were considered a single tract of land for drilling purposes and "a well commenced upon any of the

lands herein consolidated shall have the same effect as though such well were commenced upon the premises described in each such oil and gas lease."

The Devendorfs filed a complaint seeking to enjoin Tipka, Keller, Akbar Consulting and the Griffiths from using the land for oil and gas drilling. The Devendorfs also sought a declaration of the applicability of the residential restrictions to the leased properties. Both parties moved for summary judgment. The trial court granted summary judgment for the defendants. On appeal, this court determined that the Devendorfs had standing to contest the formation of the drilling unit. We remanded the case to determine the effect of the use restrictions on the lease agreements.

Upon remand, the trial court found that the residential use restrictions contained in the deeds to Akbar Lots 1 and 2, the Keller Lot and Griffith Lots 2 and 3 banned any use of those lots for oil and gas drilling. The court went on, however, to conclude that " * * * mere unitization of said property for the purpose of meeting the minimum acreage requirement is not a violation of any restrictive covenant."

The Devendorfs appeal that aspect of the trial court's order which permitted the utilization of those lots which were encumbered with residential use restrictions.

Assignment of Error

"The trial court erred as a matter of law in denying an induction [*sic*] prohibiting the leasing and use of defendants' residentially restricted property for the formation of an oil and gas drilling unit."

The Devendorfs contend that the trial court erred when it refused their request to enjoin the formation of the oil and gas drilling unit composed of those properties which were subject to residential use restrictions. We agree.

▪ A present owner of a lot subject to a restriction has the right to enforce the same or similar restrictions imposed upon the other lots by a common grantor, for there could be no purpose in writing such restrictions in the deeds if any subsequent grantee could disregard the restriction and devote the property to a prohibited use. *Wallace v. Clifton Land Co.* (1915), 92 Ohio St. 349, 359, 110 N.E. 940, 942. While restrictions are to be strictly construed in favor of the free use of land, they will be enforced where their meaning is unambiguous. *Ritzenthaler v. Pepas* (1959), 107 Ohio App. 385, 389, 8 O.O.2d 361, 363, 159 N.E.2d 472, 475. In construing the covenant, the court will look to the ordinary meaning of the words creating the restriction. *Yeager v. Cassidy* (C.P.1969), 20 Ohio Misc. 251, 254, 49 O.O.2d 410, 411–412, 253 N.E.2d 320, 322.

■ The original deed to Lot 54 required that "the grantees, their heirs and assigns shall use the premises hereby conveyed solely for private residence and agricultural purposes." The other deeds employed comparable language. The operative words in the restriction are "use," "residence" and "purposes." The words "residence" or "residential" in restrictive covenants are used in contradiction to the word "business." *Hunt v. Hunt* (1914), 90 Ohio St. 280, 283, 107 N.E. 765, 766. The word purpose is defined by Webster as "the object for which something exists or is done." Webster's New World Dictionary (3 College Ed.1988) 1092. The "use" of a thing has been defined as the "means that one is to enjoy, hold, occupy or have some manner of benefit thereof." Black's Law Dictionary (5 Ed.1979) 1382. With these definitions in mind, and construing the phrase as a whole, this court concludes that the restrictions in the deeds at issue allow the landowner to benefit from his ownership of the land only by means tailored to achieve non-commercial objectives.

■ We construed similar language in *Allen v. Pine Top Estates* (Dec. 18, 1985), Summit App. Nos. 12070 and 12164, unreported, 1985 WL 4646. In *Allen*, the issue was whether the sentence, "premises shall be used for private residence purposes only," contained in the deeds to the adjoining properties prohibited the drilling of oil and gas on any of those properties. This court held that the drilling of oil and gas was a commercial use which violated the residential use restrictions found in the deeds. *Allen v. Pine Top Estates*, *supra*. In the present case we must decide whether the holding in *Allen*, that the drilling for oil and gas violates residential use restrictions, should be expanded to cover the situation where even though no actual drilling is being conducted on the restricted properties, these properties are being used to comprise a gas and oil drilling unit.

■ The appellee landowners entered leasing agreements with Tipka. The leases permitted Tipka to pool the leased properties in order to create an operational drilling unit. The effect of the pooling arrangement was to create a single leasehold. 5 Summers, Oil and Gas (Per.Ed.1951) 64, Section 952. By consolidating the leased properties into a single leasehold, the lessee may extend the duration of a single lease as long as oil and gas is produced anywhere on the leased properties. This is so because under the pooling agreement oil and gas produced anywhere on the leasehold is considered as if it was produced on each individual property included in the drilling unit. See *Morgan v. Mobil Oil Corp.* (C.A.10, 1984), 726 F.2d 1474, 1477. The lessor landowners, on the other hand, are entitled to royalty payments by virtue of their ownership of the mineral rights in the land. 4 Kuntz, Oil and Gas (Rev.Ed.1966) 195, Section 48.3. The pooling arrangement gives the mineral

owner whose correlative rights are threatened by drainage a legal right to share in the production of the well that causes the drainage. Lowe, Oil and Gas Law (1988) 28.

Thus, the means utilized by the appellee landowners in order to derive a benefit from their land, *i.e.*, the pooling arrangement, is tailored to achieve the commercial objective of producing oil and gas. Such an objective is prohibited by the residential use restrictions contained in the deeds to the appellees' properties.

The appellees argue that the restrictive covenants are not violated because no commercial activity is being conducted on the lots. The restriction at issue, however, prohibits the use of the land for anything but *residential purposes.* The language of the restriction is broad and is intended to exclude every use not pertaining to residential purposes. The objective of the voluntary pooling arrangement is to create a drilling unit in which the appellee landowners derive a benefit by receiving one-eighth royalty payments and free use of the extracted oil or gas. Thus, the purpose being fostered by the land is a commercial purpose. Such a purpose is clearly at odds with the original grantor's intent to preserve the residential character of the tract. See, generally, *Wallace v. Clifton Land Co., supra,* 92 Ohio St. at 359, 110 N.E. at 942.

The trial court erred in not enjoining the creation of the drilling unit which was formed by the appellee landowners' voluntary pooling arrangement. The appellants' assignment of error is well-taken. Judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CACIOPPO, P.J., and MAHONEY, J., concur.