CATAWBA ORCHARD BEACH ASSOCIATION, INC., Appellant,

v.

BASINGER et al., Appellees.

[Cite as *Catawba Orchard Beach Assn., Inc. v. Basinger* (1996), 115 Ohio App.3d 402.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–95–066.

Decided Oct. 25, 1996.

*Michael W. Sandwisch,* for appellant.

*Gene W. Graves,* for appellees.

*Per Curiam.*

This case is before the court on appeal from a judgment of the Ottawa County Court of Common Pleas, which, after a trial on a request for a permanent

injunction, dismissed the complaint filed by plaintiff-appellant, the Catawba Orchard Beach Association, Inc. ("the Association"). Appellant now raises the following assignment of error:

"The Trial Court erred to the prejudice of the Plaintiff by granting judgment to the Defendants at the close of the Plaintiff's case as the same was against the manifest weight of the evidence and the law of Ohio, and the Court failed to rule on all matters properly before it, and further, the Trial Court erred in failing to grant Plaintiff's motion for a new trial based on the same issues."

The relevant facts of this case are as follows. In 1922, the Catawba Orchard Company ("Company") created Catawba Orchard Beach, a subdivision, on land located in Catawba Island Township, Ottawa County, Ohio. The deed conveying the entire tract of land to Willard G. Farnsworth, the president of the Company, was filed by the county recorder on June 8, 1922, and contained the following provisions:

"WHEREAS, in order to make certain covenants, agreements, easements, restrictions, provisions, conditions, and charges benefit and bind all of the land contained in Plat One (1) of Catawba Orchard Beach, and also benefit and bind all present and future holders and occupants of said land, the Company and the Purchaser have agreed to enter into this Deed and Agreement, whereby the Company will convey to the Purchaser all the lots and parcels of land as shown on said Plat one (1) of Catawba Orchard Beach, and immediately thereafter, the purchaser will reconvey to the Company (charged with all the covenants, agreements, easements, restrictions, provisions, conditions and charges) hereinafter set out, all of the lots so conveyed to him.

" * * *

"ARTICLE 4. RESTRICTIONS.

"The lots in said The Catawba Orchard Beach shall be used for private residences only. No building or other structures shall be erected or maintained on any lot other that [sic] a single residence, designed for the use of one family, and a private garage for the use of the owner of said lot.

" * * *

"ARTICLE 8. STREETS AND PARKS.

"It is expressly agreed that nothing herein contained or indicated or expressed on said Plat one (1) of Catawba Orchard Beach shall constitute a dedication of any street, road, way, lane, path, easement, water front and right, harbor, right of way or park, but the title to all property so shown, designated, or described, is expressly reserved to the company and neither this deed nor any deed hereafter made by the Company conveying any of the land in said plat shall be held to

convey the title to or dedicate the bed of or land covered by any street, road, way, lane, waterfront and right, harbor, easement, right of way or park.

"The Company hereby gives and grants to each owner hereafter acquiring title to any of the land included in said plat the right to such use of the streets shown on said plat, as may be necessary for reasonable and convenient ingress and egress to and from the land belonging to such owner, and also the right to use in common with other owners, those portions of said land indicated on said plat as water front and 'park' for recreation, bathing, and similar proposes; but subject to such uses by said owners."

The plat referred to in the deed contains the following statement:

"We the undersigned Owners and Trustees of the above described premises do hereby adopt this subdivision into lots as shown hereon, Lot Number 1 and Lot Number 126 are reserved for parks. No part or parts of said premises shown hereon as streets[,] roads, lanes, ways, paths, rights of way, parks, haven, or reservations are dedicated or granted to public use, the title being reserved by the undersigned for the use of the lot owners in the above subdivision and any subsequent subdivision developed by the Catawba Orchard Company."

In August 1949, the Association, a nonprofit corporation composed of owners of property in Catawba Orchard Beach, was formed. The Association's articles of incorporation state the purpose of the Association in part as "[t]o accept and hold title to roads, parks, boat basin or lagoon, and other community property, real or personal, for the owners of the lots in Catawba Orchard Beach." Moreover, Article XI defines members as owners of a lot or lots in Catawba Orchard Beach, and reads in part: "Privileges of members in good standing shall be defined as the right to use, in common with other members in good standing, the parks, beaches, playgrounds, and lagoon or boat basin in the allotment of Catawba Orchard Beach * * *."

Subsequently, Audrey G. Blade obtained title to the common areas and to lot numbers 1 and 126, referred to above. Then, on September 8, 1949, Blade conveyed by quitclaim deed her interest in those properties to the Association. That deed described the property as follows:

"[L]and, situated in the Township of Catawba Island County of Ottawa and State of Ohio: known as and being all those portions of Catawba Orchard Beach, a subdivision in said township, designated on the plat thereof as roads, streets, walks, parks, lagoon, boat basin, rights of way and beaches; the above mentioned park and boat basin being designated on said plat as Lot One (1) and the playground designated as Lot One Hundred Twenty-six (126). Subject to the rights of the grantor and other lot owners in said subdivision, their heirs and

assigns, to use the same under and subject to the rules and regulations of grantee corporation, its successors and assigns."

The deed further contained the following restrictions:

"It is further stipulated and agreed and a part of the consideration hereof, and the following shall be covenants running with the land:

"1. Said premises shall never be used for commercial purposes of any kind, nor for any other purpose, except boating, dockage, recreation, bathing, ingress and egress and noncommercial park purposes, it being understood that in being hereby conveyed to the grantee herein, said premises are at the same time dedicated to the joint and community use of the lot owners in Catawba Orchard Beach, their heirs and assigns forever, for the uses and purposes hereinabove set forth."

On July 16, 1990, defendants-appellees, Rick L. and Claudia A. Basinger, purchased lots four, five and thirty-nine in Catawba Orchard Beach. In 1993, the Basingers built single-family homes on lots four and five for the express purpose of leasing the properties to renters. At the time of the construction, the Basingers informed Thomas K. Higgins, the president of the Association, that they intended to use the homes as rental properties. Despite his belief that the deed restrictions did not allow for such rentals, Higgins did not dissuade the Basingers or inform them of his understanding of the restrictions. Subsequently, the Basingers advertised their rental properties as "house for rent with beach." Despite concern from other property owners, no official action was taken until February 16, 1995 when an attorney hired by the Association wrote the Basingers a letter informing them that their use of their lots was "in violation of the deed restrictions and association articles and rules in that you rent the lots and allow the renters to use the common areas." The attorney then requested that the Basingers stop all of the violative activities and warned them that failure to do so would result in legal action.

On May 10, 1995, the Association filed a complaint in the Ottawa County Court of Common Pleas against the Basingers, alleging that the Basingers had rented and continued to rent their property and had allowed and encouraged renters to use the common areas of Catawba Orchard Beach in violation of the deed restrictions and articles of incorporation. The complaint further alleged that the Basingers had failed to pay the 1994 assessments for their three lots in the total of $345. The complaint then alleged that appellees' violations were causing irreparable harm to the other property owners and requested that the restrictions be enforced, that appellees be temporarily and permanently enjoined from violating the restrictions, and that appellant be awarded a judgment against appellees in the amount of $345. In answering the complaint, appellees asserted,

among other defenses, that the lower court lacked subject matter jurisdiction over appellant's claim for $345.

The case proceeded to a hearing on the motions for preliminary and permanent injunction on September 8, 1995, at which the court consolidated the matters for trial. Appellant called both appellees; Thomas Higgins; Hope Davenport, a property owner and former secretary of the Association; and Jordan Davenport, an Association trustee and the harbormaster of Catawba Orchard Beach, to testify. At the conclusion of appellant's case, appellees moved for a directed verdict. Upon consideration, the court granted judgment in favor of appellees, specifically finding that appellant had made no showing of irreparable harm and that nothing in Article 4 of the restrictions prohibited the use of the property for rental of single-family dwellings. Subsequently, appellant filed a motion for a new trial, which was denied.

Appellant asserts that the trial court's judgment in favor of appellees was against the manifest weight of the evidence and that the court had failed to rule on appellant's claims that appellees had violated the restriction regarding the use of common areas and that appellant was entitled to a judgment against appellees in the amount of $345.

We will first address appellant's argument that the court's judgment was against the manifest weight of the evidence. The trial court entered judgment in favor of appellees on appellant's request for an injunction only with regard to appellant's claim that the deed restrictions prohibited appellees from renting their property. "The allowance of an injunction rests within the sound discretion of the trial court." *Farrow Restoration, Inc. v. Kowalski* (1991), 81 Ohio App.3d 54, 57, 610 N.E.2d 458, 460. Moreover, "[a] present owner of a lot subject to a restriction has the right to enforce the same or similar restrictions imposed upon the other lots by a common grantor," *Devendorf v. Akbar Petroleum Corp.* (1989), 62 Ohio App.3d 842, 845, 577 N.E.2d 707, 709, and "[p]roof of actual damage is not required as a basis for granting injunctive relief regarding deed restrictions." *Goutras v. Dillon–McDonald* (Sept. 30, 1991), Stark App. No. CA–8349, 1991 WL 207949. Accordingly, absent an abuse of discretion, we will not reverse the trial court's denial of injunctive relief. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude in denying the motion was unreasonable, arbitrary or unconscionable. *Farrow Restoration, Inc., supra,* 81 Ohio App.3d at 57, 610 N.E.2d at 459–460.

The Supreme Court of Ohio has consistently held that "[w]here the language contained in a deed restriction is indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." *Houk v. Ross* (1973), 34 Ohio St.2d 77, 296

N.E.2d 266, paragraph two of the syllabus, overruled on other grounds by *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335. "Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction. * * * The key issue is to determine the intent of the parties as reflected by the language used in the restriction." *Dean v. Nugent Canal Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 556–557.

Appellant contends that because Article 4 in the deed reads, "The lots in said The Catawba Orchard Beach shall be used for private residences only," the deed forbids any commercial use of the property, including rentals. Appellant cites *Linwood Park Co. v. Van Dusen* (1900), 63 Ohio St. 183, 58 N.E. 576, in support. In *Linwood,* the plaintiff, owner of the property, and the defendants entered into ninety-nine-year leases by which defendants leased the property and agreed to "use such premises for the purpose of a private dwelling or residence only, except on special permit from the company." *Id.* at 189, 58 N.E. at 578. One defendant then built a two-story structure containing seventeen rooms, which covered almost the entire lot and was designed for occupancy during the summer months only. The other defendants built similar structures. The defendants then rented furnished rooms to different persons for terms varying from one day to one month. The plaintiff sought an injunction to stop the rentals. The Supreme Court of Ohio held that injunctive relief was proper where the defendants made a business of renting rooms to temporary occupants and refused to obtain a special permit from the plaintiff. In particular, the court found that the defendants' use of the property violated the covenant to use the premises for the purpose of a private dwelling. Appellant asserts that *Linwood* controls because it was the state of the law at the time the deed restrictions were drafted and is still good law today. In ruling as it did, however, the court in *Linwood* stated:

"They may exercise their right to assign or sublet freely until they subject the property to uses other than that of a private dwelling or residence. The moment they do that they have broken the covenant, unless they have done it under special permit from the company. Now have they subjected the property to a use different from that covenanted? For it is admitted by the defendants that they have rented rooms in their dwellings without permission from, and in defiance of, the company. The findings of the circuit court indicate that they have done this so systematically, and to such an extent, as to amount to a business. Yet they insist that each house is still a dwelling house, or at least a collection of dwellings. 'Each of such tenants,' says the counsel for defendants, 'used his apartment for the purposes of a private dwelling.' But the plain provision of the covenant is that the leased premises shall be used for the purposes of *a* dwelling or residence only, not for a number of dwellings. More

than that, they are restricted to the use of it for a *private* dwelling or residence; and that is not a private dwelling or residence which is used in the *business* of renting rooms to lodgers or tenants." *Id.* at 199–200, 58 N.E. at 581.

In addition to the section of Article 4 upon which appellant relies, the deed restriction at issue provides: "No building or other structures shall be erected or maintained on any lot other that [*sic*] a single residence, designed for use of one family * * *." In *Devendorf, supra,* 62 Ohio App.3d at 846, 577 N.E.2d at 709, the court stated:

"The words 'residence' or 'residential' in restrictive covenants are used in contradiction to the word 'business.' *Hunt v. Hunt [Held]* (1914), 90 Ohio St. 280, 283, 107 N.E. 765, 766. The 'use' of a thing has been defined as the 'means that one is to enjoy, hold, occupy or have some manner of benefit thereof.' Black's Law Dictionary (5 Ed.1979) 1382."

▮ With these terms in mind, and in light of the rationale set forth in *Linwood,* we cannot conclude that appellees' use of their homes as rental properties violated the terms of the restrictive covenant. While the rental of the homes did earn appellees an income, no business was being conducted on the property as in *Linwood,* where the defendants were running a tenement house. Rather, the rental properties in the case at bar were used as single residences for one family each. Accordingly, the trial court did not err in granting judgment to appellees on appellant's claim that the rental of the properties violated the restrictive covenant.

Appellant further asserts that the trial court erred in failing to rule on its claim that appellees also violated the terms of the deed and articles of incorporation by allowing renters to use the common areas of Catawba Orchard Beach. Appellant's complaint set forth a separate and independent claim based on appellees' renters' use of the common areas. Control and use of the common areas of Catawba Orchard Beach are not covered by Article 4 of the deed restrictions. Rather, such control and use is covered by Article 8 of the 1922 deed, the plat filed with the 1922 deed, the Association's articles of incorporation, and the 1949 deed from Blade to the Association. The trial court was required to review the evidence before it and determine if the renters' use of the common areas violated these restrictions in view of the court's ruling that the rental of the properties did not violate the restrictive covenant. Because the court failed to make that determination, it erred in dismissing the complaint.

Finally, appellant asserts that the trial court failed to rule on its claim that appellees owed appellant $345 in assessments made against their property. At the trial below, appellees asserted that the court lacked jurisdiction over claims of less than $500. The court initially stated that it did not have jurisdiction for

claims under $500; however, upon further argument of counsel, the court stated that it would reconsider the issue. The following then occurred:

"MR. GRAVES: I assume we will be hearing evidence on that question.

"THE COURT: Yes. It wouldn't make a lot of sense to send that $345 matter over to Municipal Court when we are litigating everything else regarding the case here, but I wonder if I do have jurisdiction over that amount.

"There is an amount below which I have no jurisdiction, and then there is an amount above which I have concurrent jurisdiction with Municipal Court up to $10,000.

"Then from $10,000 up, it is exclusive jurisdiction with the Common Pleas Court, but I will sort it out or you can brief it as we go."

During the trial, evidence was presented regarding appellees' failure to pay the assessment. At the conclusion of the trial, however, the court failed to make any ruling on this issue and dismissed the entire case.

■ Appellees assert that pursuant to R.C. 1907.03 and 2305.01, the lower court did not have monetary jurisdiction over appellant's $345 claim. R.C. 1907.03(A) reads in part: "Under the restrictions and limitations of this chapter, county courts have exclusive original jurisdiction in civil actions for the recovery of sums not exceeding five hundred dollars * * *." R.C. 2305.01 then reads in part: "The court of common pleas has original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts * * *." The present case, however, comes to us from Ottawa County. Ottawa County does not have county courts. Rather, the Ottawa County Municipal Court has jurisdiction within all of Ottawa County. R.C. 1901.02. R.C. 1901.17, regarding the monetary jurisdiction of municipal courts states: "A municipal court shall have original jurisdiction only in those cases where the amount claimed by any party, or the appraised value of the personal property sought to be recovered, does not exceed ten thousand dollars." Accordingly, while the Ottawa County Municipal Court has original jurisdiction in those cases in which the amount at issue does not exceed ten thousand dollars, it does not have *exclusive* original jurisdiction. R.C. 2305.01 further provides:

"The court of common pleas may on its own motion transfer for trial any action in the court to any municipal court in the county having concurrent jurisdiction of the subject matter of, and the parties to, the action, if the amount sought by the plaintiff does not exceed one thousand dollars and if the judge or presiding judge of the municipal court concurs in the proposed transfer."

Accordingly, the trial court had concurrent jurisdiction with the municipal court over appellant's claim for $345. The lower court recognized that for purposes of

judicial economy, transferring the matter to the municipal court would not be prudent. Nevertheless, the trial court failed to rule on the claim. We find that failure to rule to be in error.

Accordingly, the assignment of error is well taken in part.

On consideration whereof, the court finds that substantial justice has not been done the party complaining. The judgment of the Ottawa County Court of Common Pleas is affirmed in part and reversed in part. This case is remanded to that court for further proceedings consistent with this decision. The parties are ordered to pay their own costs of this appeal.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

GLASSER, ABOOD and SHERCK, JJ., concur.