[Cite as *DeRosa v. Parker*, 197 Ohio App.3d 332, 2011-Ohio-6024.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DeRosa et al., | ) | Case No. 10 MA 84 |
| | ) | |
| Appellees, | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| Parker, | ) | |
| | ) | |
| Appellant. | ) | |


CHARACTER OF PROCEEDINGS:       Civil Appeal from the Court of Common
Pleas of Mahoning County, Ohio
Case No. 07 CV 2912

JUDGMENT:       Affirmed.


Roth, Blair, Roberts, Strasfeld & Lodge, James E. Roberts, Elizabeth H. Farbman,
and John A. McNally IV, for appellees.


Pfau, Pfau & Marando and Michael P. Marando, for appellant.


JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  November 16, 2011

WAITE, Presiding Judge.

{¶ 1}   Appellant, Barbara Toulmin Parker, appeals the judgment of the Mahoning County Court of Common Pleas permanently enjoining her from storing her husband's recreational vehicle ("RV") on her property.  Appellant's home is located in a platted development in Canfield, Ohio.  Appellees also own property in the development.  Appellant purchased the property subject to a deed restriction prohibiting house trailers from being parked or stored on the premises.  Appellant built a garage to keep the RV out of sight, but appellees nevertheless filed suit to enforce the deed restriction.  Appellant argues on appeal that the RV is not a house trailer as defined in the deed restrictions, that her deed does not actually contain the restriction against house trailers, that the deed restrictions were revoked, that the restriction can no longer be enforced based on theories of laches, estoppel, or unclean hands, and that no evidence of irreparable harm was submitted to justify granting a permanent injunction.  The record reflects that the vehicle being kept on appellant's property is a house trailer as contemplated by the deed restrictions.  Appellant was bound by the deed restriction, as it is in her chain of title.  The deed restrictions were not revoked through use of the mechanism for revocation set forth in the restrictions, and thus, they remain valid.  Nothing in the record indicates that the doctrines of laches, estoppel, or unclean hands apply to this case.  Finally, deed restrictions may be enforced whether or not there is additional evidence of irreparable harm.  Appellant's arguments are overruled, and the judgment of the trial court is affirmed.

History of the Case

{¶ 2} Appellant owns property at 211 Chapel Lane in Canfield Township. The property is part of a platted development known as Chapel Lane plat. Appellees are eight other homeowners in the development. In 1965, a series of restrictions on the plat were recorded. Deed restriction No. 9 prohibited owners from keeping house trailers on their property. Appellant's husband, James Parker, owns an RV that is 34 feet long and 12 feet high. The vehicle is self-propelled and has full utilities, sleeping quarters, a bathroom, and a shower. Mr. Parker regularly parked the vehicle on appellant's property. In early 2007, appellant began building a large garage to store the RV on her property. In May 2007, appellees sent a letter to appellant objecting to the garage and to the continued storage of the RV on the property. Appellees filed a suit for injunctive relief on August 9, 2007.

{¶ 3} The case was assigned to a magistrate, and a hearing for preliminary injunction was held on August 22, 2007. Appellant's husband and four of the appellees testified at the hearing. The magistrate filed his decision on October 10, 2007. The magistrate examined the deed restrictions and determined that in his view, appellant was not violating any of the restrictions. Appellees filed objections on October 23, 2007. One of those objections was that the magistrate had improperly concluded that the vehicle parked on appellant's property was not a house trailer. The court held a hearing on the objections on December 28, 2007. The court filed its judgment entry on January 7, 2008. The court adopted the bulk of the magistrate's decision, except that it specifically did not adopt the magistrate's conclusion regarding whether Mr. Parker's vehicle constituted a house trailer. The court noted that Mr. Parker's vehicle appeared to fit the definition of a house trailer. The court remanded the matter to the magistrate

for further consideration of the request for injunctive relief. Appellant filed an appeal of the judgment entry, but the appeal was later dismissed for lack of a final, appealable order.

{¶ 4} On June 26, 2008, the magistrate found that Mr. Parker's vehicle was a house trailer as contemplated by deed restriction No. 9 and granted a preliminary injunction to appellees enjoining appellant from storing the vehicle at her residence. The decision was reissued on July 18, 2008, and appellant filed objections. The objections were heard on August 29, 2008. The court filed its judgment entry on September 8, 2008. The court accepted the magistrate's conclusion that the vehicle was a house trailer and sustained appellees' motion for a preliminary injunction with respect to deed restriction No. 9. Appellant filed an appeal of this judgment entry, but it was also dismissed for lack of final, appealable order.

{¶ 5} The magistrate held a hearing on August 6, 2009, to determine whether a permanent injunction should be granted. The magistrate filed his decision on February 25, 2010. The magistrate found that all the parties were subject to the deed restrictions recorded with the Mahoning County recorder on September 30, 1965. Deed restriction No. 9 stated: "No house trailer, whether occupied or vacant, shall be kept, parked or stored on the premises." The magistrate noted that the deed restrictions are rincluded throughout the chain of title by which appellant took title to the property. The magistrate again found that Mr. Parker's vehicle was a house trailer and granted the permanent injunction. Appellant filed objections, and a hearing on the objections was held on March 31, 2010. The trial court filed its judgment entry on April 16, 2010, adopting the magistrate's decision in its entirety and entering a permanent injunction in favor of

appellees to enjoin appellant from housing or storing Mr. Parker's vehicle on the property. This timely appeal followed on May 11, 2010.

Assignment of Error No. 1

{¶ 6} "The trial court erred as a matter of law in determining that appellant's vehicle was a house trailer in violation of the restrictive covenants."

{¶ 7} Appellant argues that her husband's RV is not a house trailer as contemplated by deed restriction No. 9, and thus that there is no reason to enjoin her from having the vehicle on her property. She argues that the term "house trailer" is ambiguous in the deed restrictions and that the ambiguity must be interpreted in her favor to give her free use of her land. She argues that the common, ordinary meaning of "house trailer" does not include a motor home or RV and that this court, using a de novo standard of review, should reverse the interpretation of the trial court and hold that deed restriction No. 9 is unenforceable. Although appellant correctly cites most of the general law applicable to this case, her specific argument is not persuasive in light of the particular deed restriction at issue.

{¶ 8} The ordinary rules of construction applicable to the interpretation of contracts are to be applied when interpreting deed restrictions. *LuMac Dev. Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 565-566, 573 N.E.2d 681. "The construction of written contracts and instruments, including deeds, is a matter of law." *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208. Questions of law are determined de novo on appeal. *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949.

{¶ 9} Restrictive covenants establishing plans for the development of a tract of property that make the property more attractive for residential purposes are generally enforceable unless contrary to public policy. *Dixon v. Van Sweringen Co.* (1929), 121 Ohio St. 56, 166 N.E. 887, paragraph one of the syllabus; *Wallace v. Clifton Land Co.* (1915), 92 Ohio St. 349, 110 N.E. 940, paragraph one of the syllabus. Moreover, "[a] present owner of a lot subject to a restriction has the right to enforce the same or similar restrictions imposed upon the other lots by a common grantor * * * ." *Devendorf v. Akbar Petroleum Corp.* (1989), 62 Ohio App.3d 842, 845, 577 N.E.2d 707. If the language in a restrictive covenant is clear and not doubtful in meaning, the court must enforce the restriction. *Cleveland Baptist Assn. v. Scovil* (1923), 107 Ohio St. 67, 71-72, 140 N.E. 647. "Proof of actual damage is not required as a basis for granting injunctive relief regarding deed restrictions." *Goutras v. Dillon-McDonald* (Sept. 30, 1991), 5th Dist. No. CA-8349.

{¶ 10} The words used in a deed restriction will be given their common and ordinary meaning in the context of the time that the restriction was created. *Arnoff v. Chase* (1920), 101 Ohio St. 331, 335, 128 N.E. 319. "The court must construe the language of the covenant by giving it its common and ordinary meaning in light of the factual circumstances surrounding the writing of the restrictive covenant." *Benner v. Hammond* (1996), 109 Ohio App.3d 822, 827, 673 N.E.2d 205. "In construing deed restrictions limiting the use and enjoyment of real property, the intention of the parties as evidenced by the terms of the restriction and the surrounding circumstances, both of the parties and the subject matter, at the time of execution is the fundamental consideration. *Hitz v. Flower* (1922), 104 Ohio St. 47, 57, 135 N.E. 450, 453." *LuMac*

*Dev. Corp.*, 61 Ohio App.3d at 565. "[O]ne looks at the intention of the grantor and grantee *at the time of execution.*" (Emphasis sic.) *Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463, ¶ 50-51 (7th Dist.).

{¶ 11} In addition, courts must read the restrictive covenants as a whole. *LuMac Dev. Corp.*, 61 Ohio App.3d at 563, 573 N.E.2d 681.

{¶ 12} If the language in a restrictive covenant is clear and there is no doubt in meaning, the court must enforce the restriction. *Dean v. Nugent Canal Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554. "Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction. * * * The key issue is to determine the intent of the parties as reflected by the language used in the restriction." Id. Conversely, if the language is indefinite, doubtful, or capable of contradictory interpretation, a court must adopt that construction that least restricts the free use of the property. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 63 O.O.2d 119, 296 N.E.2d 266, paragraph two of the syllabus.

{¶ 13} When interpreting a restrictive covenant, common, undefined words appearing in the written instrument "will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus; *Farrell v. Deuble*, 175 Ohio App.3d 646, 2008-Ohio-1124, 888 N.E.2d 514. "The truth is that attempts to give precise scope and meaning to common words of homely speech are bound to fail, unless resort is had to the surroundings both of parties and subject-matter, the writer and the matter written about." *Arnoff*, 101 Ohio St. at 335, 128 N.E. 319.

**{¶ 14}** The term "house trailer" is not defined within the deed restrictions. Therefore, we need to determine the common meaning of the phrase, keeping in mind the time and context in which it was used. The deed restrictions were recorded in 1965. The statutory definition of "house trailer" in effect in 1965 is found in former R.C. 4501.01(I), effective 1963. Am.H.B. No. 479, 130 Ohio Laws 1031, 1032, 1034. The history of this particular statutory definition was examined in *Pepper Pike v. Landskroner* (1977), 53 Ohio App.2d 63, 371 N.E.2d 579:

**{¶ 15}** "The definition of house trailer as contained in R.C. 4501.01 has changed at least three times to reflect changes in the type of recreational equipment being manufactured. * * *

**{¶ 16}** "Originally, under the General Code, Motor Vehicle Statute, there was no reference to house trailers or motor homes. * * * In 1952, this same section was revised and the term house trailer was added. The definitions of trailer and house trailer as adopted at this time remained in effect through the adoption of R.C. 4501.01 and were the definitions contained in R.C. 4501.01 at the time this case was tried[:]

**{¶ 17}** "* * *

**{¶ 18}** " '(J) [formerly (I)] "House trailer" means any self-propelled and nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways.'

{¶ 19} "The definition of house trailer as provided above in R.C. 4501.01([J]J), remained in effect until August 27, 1976 * * *." Id. at 65-66, fn.2.

{¶ 20} Additional support of the unambiguous statutory definition of "house trailer" can be found in the 1965 version of Webster's Third New International Dictionary, which defines house trailer as "a trailer that can be used as living quarters." Id. at 1097. This dictionary's definition of "trailer" includes a vehicle designed to serve as a dwelling when it is parked. Id. at 2424. The 1965 dictionary does not have any entries for "mobile home," "motor home," or "recreational vehicle," and we are left with the phrase "house trailer" as the broad term for moving or movable vehicles that are designed for human habitation when at rest. The 1965 dictionary definition of "house trailer" completely coincides with the statutory definition in existence at the time.

{¶ 21} Mr. Parker's vehicle certainly fits the common definition of "house trailer" as it was defined in 1965. He admitted as much in his testimony:

{¶ 22} "Q I'm going to hand you what's been marked for identification as Exhibit 11, and then just pass this on to the court afterwards. What does that exhibit depict?

{¶ 23} "A [Mr. Parker] Pictures of my RV motorhome.

{¶ 24} "* * *

{¶ 25} "Q And that RV is fit for human habitation?

{¶ 26} "A Yes.

{¶ 27} "Q Does it need to be connected to indicated utilities in order to be used for habitation?

{¶ 28} "A No."

**{¶ 29}** Both the Webster's New International Dictionary and former R.C. 4501.01(I), Am.H.B. No. 479, 130 Ohio Laws 1032, indicate that in 1965, a "house trailer" was a vehicle that could be used for human habitation or living quarters. Appellant argues that her husband's RV, also referred to as a motor home, cannot be a house trailer because it is motorized and self-propelled. Appellant argues that a house trailer refers only to a nonmotorized vehicle that must be towed. The distinction that appellant is making was not part of the common definition of house trailer in 1965. Neither the 1965 dictionary definition nor the former statutory definition of house trailer excluded motorized vehicles from the definition of house trailer. In fact, the very first line of the statutory definition specifically defines a "house trailer" as either "self-propelled" or "nonself-propelled." Thus, the fact that Mr. Parker's vehicle is motorized does not disqualify it as house trailer under the 1965 deed restrictions.

**{¶ 30}** The specific deed restriction against storing and keeping house trailers is consistent with other aspects of the deed restrictions. The deed restrictions also state that only one single-family dwelling unit can be built on each property, and many details about the size and character of the dwelling unit are set forth in the restrictions. The restrictions prohibit tents, shacks, trailers, barns, garages, or basements from being used as a residence on the property and do not allow any temporary buildings to remain on any lot. The fact that the deed restrictions also prohibit house trailers that could be used as a temporary or second dwelling place is completely consistent with the restrictions as a whole.

**{¶ 31}** Appellant also contends that the statutory definition of house trailer in 1965 applied only to vehicles that needed to be connected to outside utilities, such as

water, electricity, or natural gas.  This is incorrect.  First, the 1965 common dictionary definition of house trailer does not discuss whether or not the vehicle is connected to outside utilities.  Second, the 1965 statutory definition does not discuss the manner in which the utilities are connected to the unit, but only that the vehicle be fit for human habitation when connected to utilities.  Mr. Parker admitted that his RV was fit for human habitation and that it had full utilities.  He testified that his RV has its own water supply, electrical power, and propane tank for gas cooking.  It has a full kitchen, two beds, a bathroom, a shower, and "all the comforts" of home.  We can only conclude that Mr. Parker's RV is suitable as human living quarters, is a house trailer as defined in 1965, and, thus, is prohibited from being kept on appellant's property under the 1965 Deed Restrictions.  For all these reasons, we overrule appellant's first assignment of error.

Assignment of Error No. 2

{¶ 32} "Even if the vehicle was a house trailer contrary to the restrictions, the trial court erred as a matter of law in enforcing such restriction against defendant when appellant's deed does not contain the mandatory language required by the restrictions."

{¶ 33} Appellant's second argument is that her deed did not actually contain deed restriction No. 9.  She contends that she is not bound by deed restriction No. 9 because her deed contained no reference to the deed restrictions.  She argues that another part of the deed restrictions required an express reference to the deed restrictions to be included in every deed for Chapel Lane plat number 1.  Appellant refers to paragraph 21 of the deed restrictions, which states:

{¶ 34} "Each deed conveying any lots platted in CHAPEL LANE PLAT NO. 1, shall contain in substance the following language, to-wit:

{¶ 35} " 'This deed is given and accepted together with and subject to the building and use restrictions and agreements as set forth in Plat Volume ___, at Page ___, Mahoning County Records of Plats, which are incorporated herein and made a part hereof as fully as though herein rewritten and which the grantees and grantors expressly assume and agree to be bound by.' "

{¶ 36} Appellant contends that this paragraph contains an assumption that if the quoted language is left out of the deed for a particular lot, then that lot is not subject to the deed restrictions. There is nothing in the language of paragraph 21 that could support such an assumption. Although paragraph 21, if followed, would certainly give additional express notice to a buyer of the deed restrictions on the property, it does not negate or alter the basic rules governing constructive notice of encumbrances. Constructive notice is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice. *In re Estate of Fahle* (1950), 90 Ohio App. 195, 105 N.E.2d 429, paragraph two of the syllabus. Generally, "[w]hen restrictions are recorded in deeds within the seller's chain of title, subsequent purchasers are deemed to have constructive notice of those restrictions and are bound by them." *Kimberly Recreation Assn. v. Butts* (Apr. 10, 1997), 10th Dist. No. 96APG09-1202. The parties acknowledge that the deed restrictions were in appellant's chain of title. Hence, she had constructive notice of the restrictions.

{¶ 37} Furthermore, paragraph 22 of the deed restrictions states: "It is understood that these restrictions shall apply in their entirety to all of the lots in CHAPEL

LANE PLAT NO. 1 * * *." It does not say that failure to follow paragraph 21 will negate all other paragraphs of the deed restrictions. Appellant had constructive knowledge of the restriction in paragraph 9. That is notice sufficient to allow appellees to enforce the restriction. Appellant's second assignment of error is overruled.

Assignments of Error Nos. 3 and 4

{¶ 38} "Even if the vehicle was a house trailer contrary to the restrictions, the trial court erred as a matter of law in enforcing such restriction against appellant because the restrictions were revoked by the fact that more than a majority of the deeds subject to the restrictions do not contain the mandatory language of paragraph 21 of the restrictions.

{¶ 39} "The trial court erred as a matter of law in enforcing the restrictions even if the vehicle was a house trailer as the restrictions were abandoned or waived."

{¶ 40} Appellant's third and fourth assignments of error are related. Appellant contends that the deed restrictions have been waived, abandoned or revoked. Appellant argues that paragraph 18 of the deed restrictions allow the restrictions to be changed, modified, or revoked by 51 percent of the property owners. Appellant argues that most of the current deeds in the plat do not contain the volume and page number of the recorded deed restrictions, even though such a reference is required by paragraph 21 of the deed restrictions. Appellant concludes that the general violation of paragraph 21 is an implied revocation of the restrictions as a whole.

{¶ 41} Appellant further contends that other deed restrictions have been violated, without consequence, by many of the home owners. She asserts that some owners have more than three garage doors. Some owners park trucks on their property that

are larger than half-ton pickup trucks. Some owners conduct commercial business from their property. One owner also parked a camper trailer on his property for a number of years. According to appellant, all these incidents constituted violations of the deed restrictions. Appellant concludes that these facts indicate a revocation, abandonment, or waiver of the deed restrictions.

{¶ 42} Appellees correctly point out that the deed restrictions contain a mechanism for changing or revoking the restrictions. Paragraph 18 states:

{¶ 43} "These covenants are to run with the land and shall be binding on all parties and all persons claiming under them * * * unless changed, modified, or revoked by fifty-one (51) percent of the property owners." There is no evidence that the property owners voted on or otherwise agreed to revoke deed restriction No. 9, at issue in this appeal.

{¶ 44} The remaining facts that appellant relies on are anecdotal at best. It may be true that various property owners have, at times, violated various aspects of the deed restrictions. Whether or not this occurred was for the trier of fact to determine, and we defer to the trier of fact in this area. Even if the trial court had agreed with appellant that all these violations had occurred, this would not constitute a waiver or abandonment of the deed restrictions. In determining whether a waiver or abandonment of a deed restriction has occurred, "the test is whether, under the circumstances, there is still a substantial value in such restriction, which is to be protected; and where there is a substantial value to the dominant estate remaining to be protected, equity will enforce a restrictive covenant * * *." *Romig v. Modest* (1956), 102 Ohio App. 225, 142 N.E.2d 555, paragraph three of the syllabus; see also *Landen Farm*

*Community Servs. Assn., Inc. v. Schube* (1992), 78 Ohio App.3d 231, 235, 604 N.E.2d 235. A party alleging a waiver or abandonment has the burden of proving his or her allegations. Id. at paragraph four of the syllabus.

{¶ 45} Appellant alleges that one other home owner kept a trailer on his property for a number of years. Appellee Anthony DeRosa testified that he had had a 14-foot trailer parked in his back yard that was suitable for camping. This evidence, even if believed by the trier of fact, would not establish that the property owners as a whole abandoned or waived the restriction against keeping house trailers on one's property. It appears that, if challenged, DeRosa would also have been in violation of the restriction. It is not clear which, if any, of the other property owners knew about the DeRosa camper trailer. Appellant's house trailer, however, is of a scope and scale beyond the trailer described by DeRosa, and it is clear that at least some of the other property owners noticed it. We find no indication in the record that the nature of the Chapel Lane plat has changed so substantially that there is no longer any value in maintaining the plat as a single-family residential area that prohibits house trailers from being stored on any owner's property.

{¶ 46} Appellant submits that the nature of the neighborhood has changed and that this change should render deed restriction No. 9 unenforceable. Appellant cites *Landen Farm,* mentioned above. *Landen Farm* involved a restriction against front-yard basketball backboards. This restriction had been violated by 50 homeowners in a planned community of about 2,400 residential units. The Twelfth District Court of Appeals found that freestanding basketball hoops had been integrated into the community and that the character of the community had been substantially altered so

that the restriction no longer had substantial value to other homeowners. *Landen Farm*, 78 Ohio App.3d at 238, 604 N.E.2d 235. Appellant did not present evidence to the trial court that the character of the Chapel Lane plat had substantially changed since deed restriction No. 9 was recorded in 1965. The only evidence in the record is that one other home owner may have had a small trailer-type vehicle in his backyard for a number of years. Appellees, on the other hand, presented evidence depicting many of the houses in the plat to prove that the character of the plat had not changed since 1965. The facts of this case are strikingly different from those in *Landen Farm*, and we are not persuaded that the holding in that case has any bearing here.

{¶ 47} Appellant's arguments regarding revocation, waiver, and abandonment are not persuasive, and we overrule her third and fourth assignments of error.

Assignment of Error No. 5

{¶ 48} "The trial court erred as a matter of law in enforcing the restrictions even if the vehicle was a house trailer as laches, estoppel and/or unclean hands bar the enforcement of restriction no. 9 against appellant; or in the alternative, the trial court's decision was against the manifest weight of evidence."

{¶ 49} Appellant argues that the doctrine of laches, equitable estoppel, or unclean hands applies in this case to prevent appellees from enforcing the deed restriction. "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Mondl v. Mondl* (Dec. 5, 2001), 9th Dist. No. 20570, 2001 WL 1545638. A decision whether or not to apply the defense of laches is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Still v. Hayman*, 153 Ohio

App.3d 487, 2003-Ohio-4113, ¶ 8.  Appellant's primary argument is that appellees should not have allowed appellant to substantially complete building a garage for the RV before deciding to file this present action.  The record does reflect that appellees objected to construction of the garage at its outset and also opposed the change in zoning that was required for appellant to begin building the garage.  Appellant proceeded to build it in spite of the objections, and within six months after construction started, appellees filed their lawsuit.  There is no abuse of discretion in the trial court's decision not to apply the doctrine of laches considering these facts.

{¶ 50} There is nothing in the record to support the application of the doctrine of equitable estoppel.  "An appellate court reviews a lower court's application of the doctrine of equitable estoppel for abuse of discretion."  *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App.3d 216, 225, 2002-Ohio-1667 780 N.E.2d 290.

{¶ 51} "Equitable estoppel has been defined as '[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he would otherwise have had.'  Black's Law Dictionary (6th Ed.1990) 538.  * * *  In Ohio, courts have applied a four-factor test to determine whether the essential elements of equitable estoppel have been satisfied:

{¶ 52} " 'To show a *prima facie* case for application of equitable estoppel, a plaintiff must show that (1) the defendant made a factual misrepresentation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party.'  *Walworth v. BP Oil Co.* (1996), 112 Ohio App.3d 340, 345, 678 N.E.2d 959, 963.  Accord *Doe v. Blue Cross/Blue Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492, 498-499; *First Fed. S. & L. Assn. v.*

*Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226-227, 463 N.E.2d 636, 647-648." *Heskett v. Paulig* (1999), 131 Ohio App.3d 221, 226-227, 722 N.E.2d 142.

{¶ 53} The doctrine of equitable estoppel is used to prevent actual or constructive fraud. *State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630. There is no allegation of any type of behavior approaching fraud in this case and no indication that the trial court abused its discretion in rejecting the defense of equitable estoppel. There is also no evidence that any of the appellees made a factual representation that was misleading or that could have induced reliance.

{¶ 54} The doctrine of unclean hands normally requires proof of some type of reprehensible conduct on the part of the person seeking equity, and appellant has not alleged or attempted to prove any such conduct. *Kinner v. Lake Shore & Michigan S. Ry. Co.* (1904), 69 Ohio St. 339, 69 N.E. 614, paragraph one of the syllabus; *Wiley v. Wiley*, 3d Dist. No. 9-06-34, 2007-Ohio-6423, ¶ 15. Once again, there is no allegation of any type of reprehensible conduct. Appellant simply believes that appellees should have made their objections known earlier or more forcefully, but based on the record, it appears that appellees did object to the garage construction very early in the planning process of the garage project. Appellant's assignment of error is overruled.

Assignment of Error No. 6

{¶ 55} "The trial court abused its discretion in granting injunctive relief in enjoining appellant from parking, keeping or storing the vehicle on her premises."

{¶ 56} Appellant here repeats most of her earlier arguments and insists that appellees did not suffer irreparable harm and for this reason should not have been

granted a permanent injunction. Appellant argues that irreparable harm is one of the elements a plaintiff must prove to be entitled to injunctive relief. When deciding whether to grant injunctive relief, courts consider (1) whether the party seeking injunctive relief is likely to succeed on the merits, (2) whether issuing injunctive relief will prevent irreparable harm for which there exists no adequate remedy at law, (3) whether and to what extent others will be injured by granting such relief, and (4) whether the public interest will be served by granting injunctive relief. *Cleveland v. Cleveland Elec. Illum. Co.* (1996), 115 Ohio App.3d 1, 12, 684 N.E.2d 343. "The grant or denial of an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion." *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496.

{¶ 57} Caselaw governing the enforcement of deed restrictions states that the restrictions can be enforced through injunctive relief. *Hitz*, 104 Ohio St. 47, 135 N.E. 450; *Prestwick Landowners' Assn. v. Underhill* (1980), 69 Ohio App.2d 45, 429 N.E.2d 1191; *Brooks v. Orshoski* (1998), 129 Ohio App.3d 386, 717 N.E.2d 1137. "A present owner of a lot subject to a restriction has the right to enforce the same or similar restrictions imposed upon the other lots by a common grantor, for there could be no purpose in writing such restrictions in the deeds if any subsequent grantee could disregard the restriction and devote the property to a prohibited use." *Devendorf*, 62 Ohio App.3d at 845, 577 N.E.2d 707. Although a showing of irreparable harm is generally a separate element when attempting to justify injunctive relief in general, there is no additional evidentiary requirement to establish irreparable harm once it is shown that a valid deed restriction exists and is enforceable. "[T]he [trial] court indicated that

the plaintiffs were required to demonstrate irreparable harm, the standard employed in most cases requesting injunctive relief, before the restrictive covenant could be enforced. We find that, in such a case, a showing of irreparable or actual harm is unnecessary." *Brooks*, 129 Ohio App.3d at 392, 717 N.E.2d 1137, citing *Catawba Orchard Beach Assn., Inc. v. Basinger* (1996), 115 Ohio App.3d 402, 407, 685 N.E.2d 584.

{¶ 58} Appellees proved that deed restriction No. 9 exists and is valid and enforceable and that appellant violated the restriction by storing a large RV on her property. The restriction is enforceable by way of injunctive relief. Irreparable harm is implicit in these cases based solely on the fact that violation of the restriction defeats the intent of the restrictions and undermines the character of the plat that is subject to the restrictions. Appellant's argument is unpersuasive, and her sixth assignment of error is overruled.

## Conclusion

{¶ 59} Appellant has failed to show that the RV parked on her property is not a house trailer as defined by deed restriction No. 9. Therefore, she is prohibited from parking or storing the RV on her property. Appellant had constructive notice of the deed restriction, and the restriction remains enforceable against her despite the absence in her deed of a specific reference to the volume and page number of the recorded deed restrictions. Appellant has not established that the deed restrictions were revoked, waived, or abandoned by the other homeowners in the plat. Appellant did not prove the defenses of laches, estoppels, or unclean hands. Appellant's argument that this injunction required separate proof of irreparable harm is unpersuasive because a deed

restriction is enforceable whether or not there is proof of irreparable harm separate from the violation, itself. Appellant's six assignments of error are without merit, and the judgment of the trial court is affirmed.

Judgment affirmed.

DeGenaro, J., concurs.

Vukovich, J., dissents.

VUKOVICH, J., dissenting:

**{¶ 60}** In construing any written instrument, the parties' intent is determined by evaluating whether there is ambiguity in the language. The language is unambiguous if it is plain, clear, definite, and subject to only one interpretation. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246. In such a case, the interpretation is a matter of law, parol evidence cannot be admitted to alter the expressed intent, and the language is applied as written. *Davis v. Loopco Indus., Inc.* (1993), 66 Ohio St.3d 64, 66.

**{¶ 61}** On the other hand, the language is ambiguous if it is unclear, indefinite, reasonably subject to dual interpretations, or of such doubtful meaning that reasonable minds could disagree as to its meaning. *Frederick v. Cocca Dev., Ltd.,* 7th Dist. No. 05MA107, 2006-Ohio-7273, ¶ 43. In many written-instrument cases, the interpretation of ambiguous language is a factual question to be determined by the trier of fact. Id. at ¶ 45. However, in dealing with deed restrictions, any ambiguity results in the employment of a whole different rule of construction. Id.

**{¶ 62}** Where the words of a deed restriction are equally capable of more than one interpretation, the interpretation will be adopted that least restricts the free use of

the land. *Houk v. Ross* (1973), 34 Ohio St.2d 77, 90-91; *Loblaw, Inc. v. Warren Plaza, Inc.* (1955), 163 Ohio St. 581, 592, citing *Frederick v. Hay* (1922), 104 Ohio St. 292, 297-298. All doubt is to be resolved in favor of the free use of land by the landowner. Id., citing *Hunt v. Held* (1914), 90 Ohio St. 280, 282-283. Restrictions on the use of property are not favored by the law, and thus, such restrictions are strictly construed against limitations upon use. *Driscoll v. Austintown Assocs.* (1975), 42 Ohio St.2d 263, 276-277. Thus, in the case of an ambiguity in a deed restriction, the trial court lacks the discretion it typically has when construing ordinary contractual language that is ambiguous.

{¶ 63} The deed restriction at issue states: "No house trailer, whether occupied or vacant, shall be kept, parked or stored on the premises." The parties dispute whether a motor home is encompassed in the definition of house trailer. Appellants state that under either the common dictionary definition or the prior statutory definition, their motor home is not a house trailer. As appellants concede, at the time the restrictions at issue were recorded, the term "house trailer" was statutorily defined in the motor-vehicle laws as "'any self-propelled and nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways.'" See *LuMac Dev. Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, 565 (evaluating the statutory definition of house trailer at the time of a

1963 deed but then pointing out that the term is no longer statutorily defined), citing 130 Ohio Laws 1031, 1032.

{¶ 64} Appellants urge that their motor home does not fall under this prior statutory definition of house trailer because it is self-contained and thus need not be connected to utilities to permit the use for human habitation. However, the portion of the definition regarding connection to utilities does not require actual connection at all times of habitation. For instance, even though a motor home is self-contained, it must eventually be connected either directly or indirectly with external water and sewage utilities. Moreover, the fact that it can be connected to utilities such as electric, water, and sewer means that it fits this definition. That is, it is designed to permit the use for human habitation when connected to indicated utilities; merely because it is also designed to permit human habitation after the utilities have been disconnected does not erase the existence of the former feature. Thus, I agree with the majority that at the time the restrictions here were drafted and recorded, a motor home fit the statutory definition of house trailer.

{¶ 65} However, a statute that previously existed in the motor-vehicle code does not necessarily govern the language of a real-estate deed restriction. As appellees conceded at oral argument and as the majority agrees, the legislative definition of a term in the motor-vehicle statutes is not necessarily the common and everyday meaning of a term used in a deed. True, in some sources, a house trailer is listed as a synonym for motor home. See, e.g., http://thesaurus.com; www.merriam-webster.com (the first known use of the term "motor home" is said to be 1965 and is synonymous with both recreational vehicle and trailer).

**{¶ 66}** However, other sources suggest that a house trailer is pulled by another vehicle. As appellants point out, Webster's Dictionary describes a house trailer as a nonautomotive vehicle designed to be hauled by road and then serve as a dwelling. See www.websters-online-dictionary.org (defining "house trailer" as "[a] wheeled vehicle that can be pulled by a car or truck and is equipped for occupancy"). "house trailer" is elsewhere defined as "a trailer fitted with accommodations for sleeping, eating, washing, etc." and is said to have originated between 1935 and 1940. See www.dictionary.com (as compared to a motor home, which is defined as a vehicle like a bus or truck with a compartment for living). This definition requires a review of the definition of "trailer." "Trailer" itself has been typically associated with a vehicle that is not powered itself but rather is drawn by an independent powered vehicle. See, e.g., Black's Law Dictionary (5th Ed.1979) 1340. Even in the 1965 dictionary used by the majority, the definition of "trailer" does not specify that it includes a self-propelled vehicle. Plus, who is to say that a deed drafter in 1965 has the brand-new dictionary. A 1949 Webster's dictionary defines "trailer" as follows:

**{¶ 67}** "A vehicle or in one is a succession of vehicles hauled, usually, by some other vehicle. Specific.: **a** A car on a street-car line pulled by another car. **b** A light two-wheeled car pulled by bicycle or motorcycle, etc. **c** A nonautomotive highway vehicle designed to be hauled, as by a tractor, a motor truck, or a passenger automobile."

**{¶ 68}** In pondering the "trailer" and "house trailer," I believe that one reasonable person could conclude that house trailer includes appellants' motor home but another reasonable person could conclude that "house trailer" does not include appellant's motor home. Notably, the magistrate originally found that the motor home was not

prohibited by the restriction and changed the decision only upon a cryptic remand by the trial court. In considering what an ordinary person would answer when asked about the terms and in looking at the various dictionary definitions, I believe that the term "house trailer" is ambiguous when applied to a motor home. Because it is ambiguous, the term should be construed in favor of the free use of the land so that the motor home is not prohibited from being parked or stored on the property. Thus, I dissent.