602 So.2d 665 (1992)
John J. BOYLE, Appellant,
v.
Louise SCHMITT, etc., et al., Appellees.
No. 92-410.
District Court of Appeal of Florida, Third District.
July 14, 1992.
John J. Boyle, in pro. per.
Robert M. Brake, Coral Gables, for appellees.
*666 Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
JORGENSON, Judge.
John Boyle appeals from a final judgment denying recovery in an action for breach of a contract to make a will. We affirm.
In 1979, James and Blanche Boyle, husband and wife, executed a document entitled "Agreement to Make Will." The agreement provided, in pertinent part, that:
The parties hereby recite and declare that John J. Boyle, their son, has and is performing services necessary to maintain them in reasonable comfort and dignity by managing and maintaining their real and personal property.
In consideration of the above services, James J. Boyle and Blanche E. Boyle, shall make a Will bequeathing and devising all their property to their son, John J. Boyle, escept [sic] that all their jewelry and household effects at 5895 S.W. 35 Street, Miami, Florida, shall go to their daughter, Louise Schmitt.
Simultaneously with the execution of the will agreement, Blanche and James Boyle executed a joint will in which each left all property to the survivor. Upon the death of the survivor, the property was to go to John Boyle with the exception of jewelry and household effects that were left to the daughter, Louise Schmitt.
During their marriage, the parties refinanced their jointly owned rental properties several times, drawing cash that they invested in municipal bonds. Eventually, the bond interest payments had to be used to meet the mortgage payments on the properties. In 1987, because of family difficulties, Blanche Boyle moved to California to live with her daughter and refused to contribute her share of the bond interest to the debt service on the properties. James Boyle sued for divorce and sought to have a constructive trust imposed on the bonds held by Blanche Boyle.[1] John Boyle, their son and plaintiff in this case, represented his father in the action against his mother. In the divorce proceeding, Blanche Boyle gave a deposition in which she expressly repudiated the Agreement to Make a Will. She did not remember executing the document and testified that she never would have agreed to leave the bulk of her property to John, effectively disinheriting her daughter and a son by a previous marriage.[2] Blanche Boyle's repudiation of the will agreement was immediately communicated to James Boyle. In addition to representing his father against his mother in the divorce proceeding, John Boyle sued his mother and his father for breach of the agreement to make a will.[3] The son later dismissed the action against his father. When Blanche Boyle died in 1989, she left a will, executed in California in 1988, naming her daughter, Louise Schmitt, as personal representative and sole beneficiary.[4] John Boyle substituted his mother's estate as defendant in the breach of contract action and joined his sister as a party.
We affirm the trial court's judgment and hold that under these circumstances, Blanche Boyle properly revoked the contract to make a will. The third party beneficiary, John Boyle, is therefore not entitled to enforce the terms of that contract against either his sister or his mother's estate.
*667 This court has held that "unlike a will which clearly is ambulatory in nature and therefore may readily be revoked by a competent testator, a contract to make a will may be irrevocable and therefore subject to specific enforcement by the courts." Donner v. Donner, 302 So.2d 452, 455 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 151 (Fla. 1975) (emphasis added; citations omitted). Therefore, "[I]f the promisor breaches his agreement to make a devise or not to revoke a will, the beneficiary of the promise or the improperly revoked will may bring an action to enforce the terms of the agreement." Johnson v. Girtman, 542 So.2d 1033, 1035 (Fla. 3d DCA 1989) (citations omitted). See also Sharps v. Sharps, 219 So.2d 735, 737 (Fla. 3d DCA) ("In a contract to make a will, the promisor has the right to change his will, and ... the right being enforced against the promisor is the contract right, and not the will...."), cert. denied, 225 So.2d 920 (Fla. 1969); In re Shepherd's Estate, 130 So.2d 888 (Fla. 2d DCA 1961) (mutual wills are ambulatory in nature and may be revoked; contract upon which mutual wills are made may be enforced depending upon circumstances); Keith v. Culp, 111 So.2d 278 (Fla. 1st DCA) (same), cert. denied, 114 So.2d 5 (Fla. 1959).
Until now, no Florida court has been presented with a case such as this, where a party to the agreement to make a will clearly and unequivocally revoked that agreement prior to death and communicated that revocation to both the other promisor and the third party beneficiary.
An agreement to make mutual wills, or the execution of wills in pursuance of such an agreement, does not bind the testators to keep the property, covered thereby, for the intended beneficiaries under such wills, or prevent them from making such other disposition of it, either inter vivos or by will, as they may desire and mutually agree, while both or all are alive. Moreover, while both or all of the parties to such an agreement are yet alive, any party may recede therefrom, and revoke his will or make a different disposition of his property, on giving proper notice to the other party or parties of his act in so doing, or where such other or others have actual knowledge thereof; but a revocation or alteration of his will by one of the parties to such an agreement in secret, or without notice to, or the knowledge of, the other or others, although all are yet alive, does not release such party from his obligations under the agreement, and it remains enforceable against him.
Allen v. Dillard, 15 Wash.2d 35, 52, 129 P.2d 813, 820-821 (1942) (emphasis added; citations omitted). See also Mitchell v. Marklund, 238 Cal. App.2d 398, 47 Cal. Rptr. 756 (1965) (divorced wife's repudiation of agreement to make a will released former husband of his obligations under agreement, where wife communicated repudiation by her conduct prior to death); Church of Christ Home for Aged v. Nashville Trust Co., 184 Tenn. 629, 636, 202 S.W.2d 178, 181 (1947) ("It cannot be doubted that either party to the agreement [to make a will], while both are still alive, may recede therefrom and make a different disposition of his property upon giving proper notice of his act in doing so.") (citations omitted). See generally, 1 Page On Wills § 10.2 (3d ed. 1960 & Supp. 1992). In this case, it is undisputed that Blanche Boyle repudiated the agreement to make a will during her lifetime and communicated that revocation both to James Boyle, the other promisor, and to John Boyle, her son and third party beneficiary. Unlike the copromisors and beneficiaries in the Florida cases construing contracts to make a will, James and John Boyle did not first learn of the repudiation after Blanche Boyle's death through a will that was inconsistent with the terms of the agreement to make a will, but during her lifetime through her unequivocal statements memorialized during her divorce from James Boyle. The reciprocal provisions of a joint will "constitute a contract between the parties which is revocable by either during their joint lives by the giving of notice to the other, becoming a fixed obligation upon the death of either one without such notice." Awramenko v. Awramenko, 19 Misc.2d 877, 878, 192 N.Y.S.2d 15, 17 (N.Y. Sup. Ct. 1959) (emphasis *668 in original). Blanche Boyle's agreement would not have become a fixed obligation until her death; until then, she was free to repudiate the agreement as long as she gave notice to her former husband and her son. Any other result would be harsh and inequitable, particularly in light of John Boyle's conduct against his mother following her move to California.[5]
In sum, we join those jurisdictions that have adopted the bright line rule that a party to a contract to make a will may repudiate that contract during her lifetime, provided that she gives notice of that repudiation to the co-promisor and the third-party beneficiary.
Affirmed.
NOTES
[1] The litigation over the bonds resulted in appeals to this court. See e.g., Schmitt v. Boyle, 598 So.2d 165 (Fla.3d DCA 1992); Boyle v. Schmitt, 552 So.2d 1158 (Fla. 3d DCA 1989).
[2] John Boyle has stipulated that his mother repudiated the will agreement during the divorce proceeding.
[3] The litigation over the contract to make a will resulted in the following appeals to this court: Schmitt v. Boyle, 591 So.2d 637 (Fla. 3d DCA 1991) (denial of petition for certiorari seeking review of order denying jury trial); Boyle v. Schmitt, 578 So.2d 367 (Fla.3d DCA) (reversal of trial court's orders dismissing two counts of son's complaints), rev. denied, 587 So.2d 1329 (Fla. 1991); Schmitt v. Boyle, 558 So.2d 1096 (Fla. 3d DCA 1990) (seeking review of orders granting leave to amend); Schmitt v. Boyle, 549 So.2d 1019 (Fla. 3d DCA 1989) (same).
[4] The will provided in part: "Not being unmindful of my sons, John Boyle, who is now suing me, and Bruce Boyle... ."
[5] Even if Blanche Boyle had not properly revoked the agreement to make a will, the mutual revocations by both parties to the agreement bar enforcement of the agreement to make a will. A contract to make a will may be modified or revoked by mutual agreement of the parties. In re Estate of Algar, 383 So.2d 676 (Fla. 5th DCA), rev. denied, 389 So.2d 1107 (Fla. 1980). Following the execution of the agreement and the mutual will, Blanche and James Boyle made subsequent wills, some jointly, and some individually. The wills did not conform to the agreement. Through execution of those wills that were inconsistent with their 1979 agreement to make a will, Blanche and James Boyle both revoked that agreement even before Blanche Boyle individually repudiated it in June, 1988.