[Cite as *In re Guardianship of Mull*, 2015-Ohio-5440.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DAVID R. GIFFIN, AS TRUSTEE OF THE MARIE F. MULL REVOCABLE TRUST et al., | ) ) ) ) | CASE NO. 15 BE 11 |
| PLAINTIFFS-APPELLEES, | ) ) | |
| VS. | ) ) | OPINION |
| W. QUAY MULL II, et al, | ) ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Probate Court of
Belmont County, Ohio
Case No. 12CV534

JUDGMENT:                                  Affirmed.

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  December 17, 2015

[Cite as *In re Guardianship of Mull*, **2015-Ohio-5440.**]
APPEARANCES:

For Plaintiff-Appellee:

Atty. Stephen F. Ban
Metz, Lewis, Brodman, Must
O'Keefe, LLC
535 Smithfield Street, Suite 800
Pittsburgh, Pennsylvania 15222

Atty. Daniel R. Swetnam
Ice Miller, LLP
250 West Street, Suite 700
Columbus, Ohio 43215

Atty. Erik Schramm
Hanlon, Estadt, McCormick
& Schramm Co., LPA
46457 National Road West
St. Clairsville, Ohio 43950

Atty. Todd K. DeBoe
Asst. Atty. Gen., Office of the Ohio
Atty. Gen.
Charitable Law Section
150 E. Gay Street, 23rd Floor
Columbus, Ohio 43215-3130

Patricia Gibson, *pro se*
7008 Villa Maria Ct.
Austin, Texas  78759

Atty. Wade Harrison
4041 N. High Street
Suite 200
Columbus, Ohio  43214

For Defendant-Appellant:

Atty. Charles Bean
Thornburg & Bean
113 West Main St.
P.O. Box 96
St. Clairsville, Ohio 43950

Atty. Richard A. Myser
Fregiato, Myser and Davies
320 Howard Street
Bridgeport, Ohio 43912

Atty. David K. Liberati
Assistant Prosecuting Attorney
Belmont County, Ohio
Courthouse Annex No. 1
147-A West Main Street
St. Clairsville, Ohio 43950

Atty. Eric Costine
The Costine Law Firm
138 West Main Street
St. Clairsville, Ohio 43950

ROBB, J.

{¶1}   Defendants-Appellants Thoburn United Methodist Church, St. Clairsville Public Library and the House of the Carpenter ("Charities") appeal the decision of Belmont County Probate Court denying their motion for summary judgment and granting both Plaintiff-Appellee David R. Giffin, Trustee of the Marie F. Mull Revocable Trust and Defendant-Appellee W. Quay Mull's motions for summary judgment.  There are two issues in this case.

{¶2}   The first is whether a properly executed amendment to an improperly executed agreement validates the original improperly executed agreement. Specifically, in this case there was agreement between husband and wife that their wills and revocable trusts could not be modified upon the death of the first spouse ("Family Agreement").  The Family Agreement was not executed in accordance with Florida law.  However, prior to the death of husband, the parties amended the Family Agreement and properly executed that amendment.   The amended Family Agreement ratified and confirmed the original Family Agreement, except for the specified changes in the amendment.  The probate court determined, as a matter of law, that the amendment republished the original Family Agreement and was binding.

{¶3}   The second issue is whether the probate court abused its discretion in failing to remove Appellee Giffin as trustee of Marie Mull's trust.  This issue raises two questions.  First, whether the probate court's denial of a motion to remove is a final appealable order that should have been appealed earlier.  And second, whether Appellants Charities had standing to seek removal.

{¶4}   For the reasons expressed below, the probate court's decisions are hereby affirmed.  The grant of summary judgment for Appellees Quay Mull and Giffin is affirmed because the amendment incorporated the Family Agreement and was binding.  As for the motion to remove Appellee Giffin as trustee, the appeal of the trial court's order denying the motion was untimely.

Statement of the Facts

{¶5}   William and Marie Mull, during their marriage, accumulated significant assets. Appellee Giffin was their financial advisor since 1983 or 1984.  It appears his advice helped in the accumulation of their wealth.

{¶6}   In 1987, William and Marie decided to enter into a contract regarding their estate planning and agreed to adopt similar revocable trusts.  10/1/87 Family Agreement.  The Family Agreement provided upon the death of the first dying spouse, the assets of that dying spouse would transfer to surviving spouse's revocable trust.  10/1/87 Family Agreement ¶ C.  Upon the death of the first spouse, the Family Agreement could not be changed, modified or terminated.  10/1/87 Family Agreement ¶ D.  Also, upon the death of the first dying spouse, the survivor could not revoke or modify their revocable trust.  10/1/87 Family Agreement ¶ 4.

{¶7}   The Family Agreement was signed by William and Marie.  However, it was not witnessed or notarized.

{¶8}   Both parties executed their revocable trusts that same day, October 1, 1987. Appellee Quay Mull (William's son from a previous marriage) was the major beneficiary (50%) of the trusts.  Appellants Charities were not beneficiaries of these trusts.  Bill was named the trustee of his trust and Marie was named the trustee of her trust.

{¶9}   On September 13, 1993, William and Marie executed an Amendment to the Family Agreement, dated October 1, 1987.  In this Amendment, the parties agreed to exempt any tangible personal property from the Family Agreement.  9/13/93 Amendment ¶ 1.  The second paragraph of the Amendment states the parties "ratify and confirm the Agreement of October 1, 1987, except as set forth herein."

{¶10} This agreement was signed by both William and Marie, witnessed by two witnesses and accompanied by a "SELF-PROOF AFFIDAVIT" that was signed witnessed, and notarized.

{¶11} William and Marie then executed a First Amendment to the Revocable Trusts on September 13, 1993 (First Amendment).  Beneficiaries were added to the trusts; however, Appellee Quay Mull was still to receive 50%.  Appellant Thoburn

United Methodist Church was the only charity listed as a beneficiary in the First Amendment.

**{¶12}** William Mull died September 26, 1997.

**{¶13}** After his death, Marie amended her trust two times, once on March 22, 2002 (Second Amendment) and once on November 3, 2011 (Third Amendment). Both of these amendments excluded Appellee Quay Mull as a beneficiary. It appears that Marie also excluded all of William's family as beneficiaries. All of Appellants Charities were named as beneficiaries in the Second Amendment. However, in the Third Amendment only Appellants Thoburn United Methodist Church and St. Clairsville Public Library were named as beneficiaries; Appellant House of the Carpenter was not named as a beneficiary in that amendment.

**{¶14}** Appellee Giffin became the successor trustee of Marie's revocable trust on September 27, 2010. This was after Marie removed herself as trustee. Under the 1993, 2002, and 2011 amendments to the Trust, Giffin is named as successor trustee.

**{¶15}** Marie was declared incompetent on July 25, 2012.

**{¶16}** It appears from the briefs and filings that Marie is still alive and incompetent.

Statement of the Case

**{¶17}** In November 2012, Appellee Giffin, in his capacity as Trustee, filed a complaint asking for the probate court to declare which trust of Marie Mull was controlling and whether the Family Agreement was valid and enforceable. The named defendants were the beneficiaries of the 1987 Trust, and the 1993, 2002, and 2011 Amendments to the Trust, which included Appellee Quay Mull and Appellants Charities.[1]

---

[1] Other beneficiaries were named. However, they have either not participated in the proceedings below, or did not file an appellate brief. The only parties to the appeal are Appellee Giffin, Appellee Quay Mull and Appellants Charities.

**{¶18}** Appellee Quay Mull and Appellants Charities filed answers to the complaint. 1/2/13 St. Clairsville Library answer; 1/4/13 Quay Mull answer; 1/11/13 Thoburn United Methodist Church answer; 2/22/13 The House of the Carpenter answer.

**{¶19}** Thereafter, Appellants Charities moved to remove Appellee Giffin as trustee. 9/9/13 Motion. They claimed Appellee Giffin had a conflict of interest because during his deposition he stated that he made personal commitments to William that he would not permit Marie to remove Appellee Quay Mull as a beneficiary of the trust. Also, they alleged Appellee Giffin had a conflict of interest because Marie's trust owns stock in Appellee Giffin's company.

**{¶20}** Appellee Giffin filed a motion in opposition to his removal arguing that there is no conflict of interest, he has not committed a "serious breach of trust," and Appellants Charities have no legal standing because one or two of the charities have no interest in the trust. 10/3/13 Memo in Opposition to Remove Trustee.

**{¶21}** Appellants Charities filed a response and requested a hearing on the matter. 10/15/13 Motion.

**{¶22}** A hearing occurred on October 18, 2013. Following the hearing, the probate court found Appellants Charities had standing to raise the issue. However, the probate court denied the request to remove Appellee Giffin as trustee. 10/23/13 J.E.

**{¶23}** The parties then filed their respective motions for summary judgment. In their motions for summary judgment, Appellees Quay Mull and Giffin argued the Family Agreement was validated by republication. 11/21/14 Quay Motion for Summary Judgment; 11/24/14 Giffin Motion for Summary Judgment. Both asserted the 1993 First Amended Trust is the controlling trust. Conversely, Appellants Charities asserted the Family Agreement was void and could not be validated by republication. 12/27/13 Charities Motion for Partial Summary Judgment; 11/20/14 Second Motion for Partial Summary Judgment.

**{¶24}** The probate court held a hearing on the motions January 30, 2015. On February 4, 2015, it held that Florida law was controlling because the Mulls were residents of Florida when the 1987 and 1993 documents were executed. It found that although the 1987 Family Agreement was not executed in accordance with Florida law, it was validated when the parties amended the Family Agreement in 1993, properly executed the Amendment, and stated in the Amendment that the prior Family Agreement was ratified and confirmed. 2/4/15. Accordingly, the probate court granted summary judgment for Appellees Giffin and Quay Mull.

**{¶25}** Appellants Charities timely appealed the February 4, 2015 decision.

<u>First Assignment of Error</u>

"The court below erred in not holding the "1987 Side Agreement" [Family Agreement] void since the Mulls were Florida residents and the same did not comply with Florida law in that it was improperly executed."

**{¶26}** This assignment of error raises two core issues. The first is what choice of law applies to the Family Agreement. Is it Florida or Ohio law? Second, if Florida law is applicable, what is the effect of the improperly executed Family Agreement? Did the 1993 Amended Agreement render the Family Agreement enforceable?

**A. Choice-of-law**

**{¶27}** Appellants Charities' assert the Family Agreement was not properly executed, must be deemed void, and cannot be ratified. This argument is premised on the position that Florida law applies.

**{¶28}** Appellee Giffin concedes that if this court engages in a choice-of-law analysis, Florida law most likely applies. He asserts, however, that a choice-of-law analysis is only required if there is a conflict between Ohio and Florida law.

**{¶29}** Both of Appellee Giffin's propositions are correct.

**{¶30}** The Family Agreement does not contain a choice-of-law provision. It was executed in Ohio, but at the time of execution William and Marie Mull were Florida residents.

**{¶31}** The Ohio Supreme Court has stated:

In the absence of an effective choice of law by the parties, the contacts to be taken into account to determine the law applicable to an issue include:(a) the place of contracting,(b) the place of negotiation of the contract,(c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.(Section 188 of 1 Restatement of the Law 2d, Conflict of Laws, adopted and applied.)

*Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984), paragraph 1 of the syllabus.

**{¶32}** In engaging in a choice-of-law analysis, Appellee Giffin correctly indicates: 1) the record demonstrates that the 1987 estate plan was prepared in Florida with the help of a Florida lawyer; 2) William and Marie Mull changed their residence to Florida in 1987, and; 3) although the Family Agreement does not specify the controlling law, the other estate plan documents indicate that Florida law controls.

**{¶33}** The above analysis, however, only must be undertaken when "[a]n actual conflict between Ohio law and the law of another jurisdiction" exists. *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, paragraph 1 of the syllabus. Consequently, if the result under Ohio law would be the same as the result under Florida law, we are not required to determine the applicable law.

**{¶34}** Under Ohio law, an agreement to make a will or give a devise must be in writing and signed by the maker or another person at the maker's express direction. R.C. 2107.04. The Family Agreement was in writing and was signed by both William and Marie. Thus, it is valid under Ohio law.

**{¶35}** Florida law provides:

No agreement to make a will, to give a devise, not to revoke a will, not to revoke a devise, not to make a will, or not to make a devise shall be binding or enforceable unless the agreement is in writing and signed by the agreeing party in the presence of two attesting witnesses. Such an

agreement executed by a nonresident of Florida, either before or after this law takes effect, is valid in this state if valid when executed under the laws of the state or country where the agreement was executed, whether or not the agreeing party is a Florida resident at the time of death.

Fla. Stat. 732.701(1).

{¶36} As aforementioned, the Family Agreement was executed in Ohio and at the time of execution William and Marie were Florida residents. This means the second sentence of the statute is not applicable and the Family Agreement was required to be signed "in the presence of two attesting witnesses." The Family Agreement did not comply with that requirement because it was not witnessed. Thus, under Florida law the Family Agreement was not properly executed.

{¶37} Although Florida and Ohio differ on what is required for the execution of the Family Agreement, there is no conflict between Ohio and Florida law, if Florida law permits the Family Agreement to be ratified by the 1993 Amendment.

{¶38} This brings us to the second issue under this assignment of error.

### B. What effect does the 1993 Amendment have on the improperly executed Family Agreement?

{¶39} Appellants Charities assert the Family Agreement is void because it was not properly executed and cannot be ratified. Appellees Giffin and Quay Mull counter asserting the Family Agreement is not void ab initio and can be ratified.

{¶40} The parties' arguments raise the question as to whether, under Florida law, an improperly executed agreement to make a will or devise is void and incapable of being ratified? Or is it voidable and capable of being ratified? The parties' arguments focus on probate law and whether probate law permits an improperly executed Family Agreement to be ratified by a subsequent agreement. We, however, do not need to focus solely on probate law to resolve the issue presented. General principles of contract law can apply in this instance.

{¶41} A Family Agreement is a contract and thus, general contract law is applicable. In general, contracts are defined by the plain meaning of the terms in the

contract. *Emerald Pointe Prop. Owners' Ass'n v. Commercial Constr. Indus., Inc.*, 978 So.2d 873, 877 (Fla. 4th Dist.2008). Where a contract is unambiguous, the parties' intent must be gleaned from "the four corners of the document." *Dows v. Nike, Inc.*, 846 So.2d 595, 601 (Fla. 4th Dist.2003). The four corners of the contract may also include a document that is incorporated by reference in the contract. Incorporation occurs "if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." *Geico Gen. Ins. Co. v. Virtual Imaging Services, Inc.*, 90 So.3d 321, 326 (Fla.App.2012), quoting *Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So.2d 627, 631 (Fla. 1st DCA 1999); *see also OBS Co. v. Pace Constr. Corp.*, 558 So.2d 404, 406 (Fla.1990) ("It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing.").

**{¶42}** Here, the evidence indicates the Family Agreement was incorporated by reference in the 1993 Amendment and thus, became a part of the 1993 Amended Agreement. The Family Agreement was executed on October 1, 1987 and is titled "AGREEMENT." The Amendment to the Family Agreement is titled "AMENDMENT TO AGREEMENT." This Amendment was executed on September 13, 1993. The introductory paragraphs to the Amendment stated:

> THIS IS AN AMENDMENT TO THAT CERTAIN AGREEMENT between WILLIAM Q. MULL ("WILLIAM") and MARIE F. MULL ("MARIE") dated October 1, 1987.
>
> * * *
>
> WHEREAS, the parties entered into an Agreement dated October 1, 1987 regarding certain agreements with respect to their estate planning; and
>
> WHEREAS, the Agreement provides that it may be modified by a written amendment executed by the parties; and

WHEREAS, the parties desire to amend the Agreement as set forth herein.

1993 Amended Agreement.

{¶43} The first paragraph of the amendment indicated what property was exempt from the agreement to devise or will. The second paragraph of the 1993 Amended Agreement then stated, "The parties hereby ratify and confirm the Agreement of October 1, 1987, except as set forth herein." The 1993 Amended Agreement was signed by both William and Marie and signed by two witnesses. Attached to the 1993 Amended Agreement was a "Self-Proof Affidavit," that was also signed by William and Marie and the two witnesses. This "Self-Proof Affidavit" was notarized.

{¶44} The statements in the 1993 Amended Agreement refer to the Family Agreement, and confirmed and ratified the Family Agreement. The 1993 Amended Agreement was properly executed. Therefore, the Family Agreement was incorporated by reference in the 1993 Amended Agreement. This incorporation made the Family Agreement enforceable.

{¶45} Furthermore, Florida statutory law is clear that an improperly executed will can be saved by a properly executed codicil that ratifies the improperly executed will.

{¶46} The parties, in asserting their respective positions as to whether ratification can remedy the improperly executed Family Agreement, refer to two cases from Florida Appellate Courts, *Talmudical Academy of Baltimore v. Harris*, 238 So.2d 161 (Fla.App.1970) and *Donner v. Donner*, 302 So.2d 452 (Fla.App.1974). In both cases, the promise to bequest was made in other states and was not witnessed.

{¶47} In *Talmudical*, ratification was not discussed and the appellate court affirmed the trial court's dismissal of the portion of the complaint which sought to enforce a promise to make a bequest. *Talmudical* at 162-163.

{¶48} In *Donner*, the agreement to bequeath was enforced despite the witness deficiencies because the agreement had been litigated in previous suits (in Alabama and in Florida) and in those initial suits the enforceability of the agreement

was not raised. *Donner* at 454. Enforceability was not raised until a subsequent suit in New York. In that suit, the deceased argued the agreement to bequeath did not comply with Florida statute 731.051 because the agreement was not witnessed. *Id.* Florida Statute 731.051 is the predecessor to Florida Statute 732.701. Both statutes require agreements to will or devise to be signed in the presence of two attesting witnesses. The New York court held that the issue was barred by res judicata because it was not raised in the previous suits. *Id.* at 454-456. Therefore, when the deceased's will was probated in Florida, and when the beneficiary of the agreement to bequeath sued in Florida seeking enforcement of the agreement to bequeath, the Florida court also relied on res judicata. *Id.* It held that the agreement to bequeath was enforceable because the decedent had his day in court; "[t]he terms of the separation agreements as incorporated in the Alabama decree, domesticated in Florida, and accorded full faith and credit in New York are now binding upon the decedent's estate." *Id.* at 455. Ratification was not discussed in *Donner.*

**{¶49}** Although *Donner* and *Talmudical* do not indicate whether an improperly executed agreement to will or devise can be ratified, both do indicate that agreements to will or devise are part of **Florida probate law**:

> Section 731.051 is a part of the **Florida probate law**. It does not deal with the validity of an agreement but with the enforceability of the agreement in the courts of this state. As such it is a part of the public policy of the state dealing with the kind of claim against an estate that will be allowed or enforced by the courts of the state. It is therefore procedural in nature and is applicable to all actions such as the present one brought in this state.

(Emphasis added.) *Talmudical* at 162. *See also, Donner* at 456.

**{¶50}** In Florida, execution of wills is governed by Statute 732.502. The version in effect at the time the Family Agreement was executed and at the time the Amended Agreement was executed, provided that every will must be in writing and "executed" in the following manner. Florida Statute 732.502. It must be signed by

the testator at the end and it must be signed in the presence of two attesting witnesses who must sign the will in the presence of the testator and in the presence of each other. Florida Statute 732.502(1)(a), (b), and (c). The statute further provided that a codicil shall be "executed" with the same formalities as a will. Florida Statute 732.502(4).

{¶51} Florida Statute 732.511 governs republication of a will by reexecution. It states, "[i]f a will has been revoked or if it is invalid **for any other reason**, it may be republished and made valid by its reexecution or the execution of a codicil republishing it with the formalities required by this law for the execution of wills." Florida Statute 732.511 (Emphasis Added). This statute was in effect at the time the Family Agreement was signed by William and Marie and at the time William and Marie executed the 1993 Amended Agreement. Improper execution is a reason a will would be deemed invalid. Therefore, it logically follows that based on Florida Statute 732.511, proper execution of a codicil that republishes the will constitutes proper execution of the will that was previously improperly executed.

{¶52} Consequently, an agreement to make a will or devise under Florida Statute 732.701 is part of probate law. Probate law allows for a properly executed codicil to revive a revoked will or a will that would be considered invalid for any other reason. It logically follows that an improperly executed agreement to make a will or devise can be ratified by a properly executed amendment to the agreement.

{¶53} For all of the above reasons, we hold that the 1993 Amended Agreement validated the Family Agreement.

### C. First Assignment of Error Conclusion

{¶54} The first assignment of error lacks merit. The result under Florida law and Ohio is the same, the Family Agreement is enforceable. Under Ohio law it was enforceable upon execution because it was executed in accordance with R.C. 2107.04. Under Florida law, the 1993 Amended Agreement validated it. The trial court's conclusion that the Family Agreement is enforceable is affirmed.

Second Assignment of Error

"The court below erred in not finding that the "1987 Side Agreement" was revoked by the subsequent Amendments in 2002 and 2011 which were accepted by David Giffin, the Trustee, and the 2011 Amendment was written by David Giffin."

**{¶55}** This assignment of error addresses whether there is evidence that the Family Agreement was revoked during William's lifetime. Appellants Charities argue the 2002 and 2011 Amendments to the Trust (Amendment 3 and 4), which occurred after William's death, are an indication that the Family Agreement was revoked. They cite no case law to support this position.

**{¶56}** A contract to make a will may be irrevocable. *Donner*, 302 So.2d at 455. The Family Agreement, per its terms, became irrevocable upon the death of the first spouse. During the lifetimes of both spouses, the Family Agreement could be altered. The Agreement provided that it could be "terminated, modified or amended by written consent of both William and Marie during their lifetime." Family Agreement. That provision was not modified in the 1993 Amended Agreement. No evidence of written consent signed by both William and Marie was presented to the probate court.

**{¶57}** Likewise, all evidence presented during discovery indicates the Family Agreement was not revoked. Appellee Giffin sent a letter to William and Marie in April 1997, approximately five months prior to William's death. This letter outlined some trust amendments that William and Marie were contemplating. Nothing in this letter suggests that the Family Agreement was revoked.

**{¶58}** Furthermore, nothing in Appellee Giffin's deposition testimony suggests the Family Agreement was revoked. He testified at his deposition that he had a discussion with Marie about her wishes to change the trust. Giffin Depo. 34. He told her she could not because of the Family Agreement. Giffin Depo. 34-35. Her response was that she did not care and she was going to change the trust. Giffin Depo. 35. Appellee Giffin described the conversation as heated and avowed that he informed her that the changes would not prevail if challenged by Appellee Quay Mull. Giffin Depo. 35.

**{¶59}** The mere fact that Marie amended the trust twice after William's death is not an indication, without more, that William and Marie had a written agreement to terminate the Family Agreement. Marie's act of amending the trust twice after William's death may have showed her intent to revoke the Family Agreement. However, it does not evince that William during his lifetime, had an intent to revoke the agreement. "Revocation or alteration of a will or trust by one party to an agreement to devise or will does not release that party from his or her obligation under the agreement to devise or will when the revocation or alteration was done in secret or without notice to the other parties to an agreement to devise. *Boyle v. Schmitt*, 602 So.2d 665, 667-68 (Fla.3d.App.1992). In *Boyle*, Blanche repudiated the agreement to make a will during her lifetime and communicated that revocation both to James, the other promisor, and to John, the third-party beneficiary. *Id.* Her acts in that case was evidence of repudiation of the contract. In the matter at hand, there is no evidence that the Family Agreement was repudiated in any manner, let alone in the manner required by the Agreement.

**{¶60}** For those reasons, this assignment of error is meritless; there is no evidence that the Family Agreement was revoked during William's lifetime.

Third Assignment of Error

"The Court below erred in not finding that the Trustee and any Third-Party Beneficiaries were estopped and/or waived and/or were guilty of laches in finding the Amendments did not revoke the invalid 1987 Side Agreement."

**{¶61}** There is only one paragraph in the combined argument for the first three assignments of error that addresses the proposition raised in the third assignment of error. That paragraph states:

> Lastly, the fact that the Trustee, David Giffin, was involved with all the amendments to Marie Mulls' Revocable Trust and accepted them as the successor trustee in 2010 and was the financial advisor to Marie Mull since the 1980's demonstrates a factual question that the 1987 Side Agreement was not only revoked, but also demonstrates that estoppel, waiver and laches are a relevant and a factual issue is

present in this case, which would not be subject to a summary adjudication.

Appellant's Brief at 19.

**{¶62}** Ohio Appellate Rule 16(A)(7) requires each assignment of error to be supported by arguments "with citations to authorities, statutes and parts of the record on which appellant relies." Appellant's argument for this assignment fails to discuss and cite authority for the elements of estoppel, waiver and laches; there is no argument how each of these theories applies to this case. Accordingly, there is no compliance with Appellate Rule 16 and the argument can be rejected on that basis. *See Strama v. Allstate Ins.*, 7th Dist. No. 14BE8, 2015-Ohio-2590, ¶ 18-19 (Assignment of error refers to five claims, but arguments presented under assignment of error only addresses three claims. We limited our review to only the three claims argued.) However, in the interest of thoroughness we will do a cursory review of the theories and potential application to the facts of this case.

### A. Estoppel

**{¶63}** It is assumed Appellants Charities' estoppel argument is based on equitable estoppel, not promissory estoppel. We have previously explained:

> "Equitable estoppel has been defined as '[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he would otherwise have had.' Black's Law Dictionary (6th Ed. 1990) 538. * * * In Ohio, courts have applied a four-factor test to determine whether the essential elements of equitable estoppel have been satisfied:

> "'To show a prima facie case for application of equitable estoppel, a plaintiff must show that (1) the defendant made a factual misrepresentation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party.' *Walworth v. BP Oil Co.* (1996), 112 Ohio App.3d 340, 345, 678 N.E.2d 959, 963. Accord *Doe v. Blue Cross/Blue*

*Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492, 498–

499; *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio

App.3d 135, 145, 11 OBR 215, 226–227, 463 N.E.2d 636, 647–648."

*Heskett v. Paulig* (1999), 131 Ohio App.3d 221, 226–227, 722 N.E.2d

142.

*DeRosa v. Parker*, 197 Ohio App.3d 332, 347, 2011-Ohio-6024, 967 N.E.2d 767, 778, ¶ 51-52 (7th Dist.).

**{¶64}** As Appellee Giffin points out, there is no evidence of any "factual representation." The record indicates Appellee Giffin told Marie Mull the second and third amendments to the trust violated the Family Agreement and were not valid. There is no evidence Appellee Giffin ever made a representation to Appellants Charities that the amendments were valid and they would be receiving a portion of the estate. Also, there is no evidence of reliance that caused detriment to the relying party; Appellants Charities presented no evidence of their reliance or their detriment.

### B. Waiver

**{¶65}** "'Waiver' is defined as a voluntary relinquishment of a known right." *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 435, 732 N.E.2d 960 (2000). The party attempting to assert waiver "must prove a clear, unequivocal, decisive act of the party against whom the waiver is alleged, showing such a purpose or acts amounting to an estoppel on his part." *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 2 N.E.2d 501(1936), paragraph four of the syllabus.

**{¶66}** We have stated, "'The essential elements of a waiver are an existing right, benefit, or advantage; knowledge, actual or constructive, of the existence of such right, benefit, or advantage; and an actual intention to relinquish it or an adequate substitute for such intention.'" *Kotora v. Unibank*, 7th Dist. No. 95-J-2, 1996 WL 420215, (July 25, 1996).

**{¶67}** Appellee Giffin contends the "right, benefit, or advantage" belongs to the remainder beneficiaries under the First Amendment because they are the ones harmed by the breach of the Family Agreement. Appellee Giffin is not a beneficiary and thus, it would appear that the concept of waiver is inapplicable to him. Or, in

other words, he could not waive the remainder beneficiaries' rights. There is nothing in the record to suggest the remainder beneficiaries knew they were beneficiaries until this action or that they did anything to waive their rights under the First Amendment to the Trust.

### C. Laches

**{¶68}** The four elements of laches are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 882 N.E.2d 435, 2008–Ohio–706, ¶ 11, quoting *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

**{¶69}** Similar to the equitable estoppel, this theory fails because no evidence of prejudice was presented by Appellants Charities.

### D. Third Assignment of Error Conclusion

**{¶70}** For the above stated reasons, this assignment of error lacks merit.

### Fourth Assignment of Error

"The court below erred in not removing the Trustee David R. Giffin for conflict of interest in that he admitted he was protecting William Mull and that he also had a financial interest in remaining trustee in that the trust portfolio contained substantial investments in Giffin Mortgage Company. (*See*: Filed Sealed Financial Portfolio of Marie Mull Revocable Trust.)"

**{¶71}** Appellants Charities argue the probate court erred when it failed to remove Appellee Giffin as trustee. Appellants Charities assert Appellee Giffin had a conflict of interest and was not able to advance the interest of the Settlor (Marie) or the beneficiaries of the Trust. They contend his deposition testimony indicates that his loyalties lie with William, not Marie. [2]

---

[2] Although the language of the assignment of error also indicates Appellee Giffin has a conflict of interest because the trust is invested in his company, the arguments presented under the assignment of error do not address that claim.

**{¶72}** Appellee Giffin counters Appellants Charities argument by asserting that Appellants Charities did not timely appeal the October 23, 2013 order denying their request to remove Appellee Giffin as trustee. He argues that even if it was timely appealed, Appellants Charities lacked standing to seek his removal because Marie was still alive. However, even if they did have standing, he contends that he can only be removed for a "serious breach of trust" and Appellants Charities did not provide any factual basis for an alleged breach of trust.

**{¶73}** Appellee Quay Mull also responds to Appellants Charities arguments. He argues the probate court did not err in failing to remove Appellee Giffin as trustee because Marie is still alive and Appellee Giffin's duties as trustee are solely to her.

**{¶74}** Our analysis begins with the jurisdictional issue of whether the appeal is timely.

**{¶75}** The order denying the motion to remove Appellee Giffin as trustee is dated October 23, 2013. The notice of appeal in this case was not filed until March 2, 2015. The notice of appeal was filed approximately one month after the probate court determined the Second and Third Amendments to the Trust were invalid, and the First Amendment to the Trust was controlling. This determination was based on the validity of the Family Agreement and the Amendment to the Family Agreement.

**{¶76}** Appellee Giffin contends the October 23, 2013 order was a final appealable order, it was not timely filed, and the appeal of that order is not properly before this court. He equates the decision to not remove a trustee to the decision to remove an executor of an estate. He contends we have previously determined the decision to remove an executor of an estate is a final appealable order. *In re Geanangle*, 147 Ohio App.3d 131, 2002-Ohio-850, 768 N.E.2d 1235, ¶ 29 (7th Dist.).

**{¶77}** Appellants Charities counter and assert that the October 23, 2013 judgment does not contain Civ.R. 54(B) language and thus, did not become a final appealable order until all claims were resolved on March 2, 2015.

**{¶78}** "An order of a court is a final, appealable order only if the requirements of both Civ.R. 54(B), if applicable, and R.C. 2505.02 are met." *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus. Thus, a two-step

analysis is used to determine whether an order is a final appealable order. First, the court determines if the order is final within the requirements of R.C. 2505.02. Second, the court determines whether Civ.R. 54(B) applies and, if so, whether the order being appealed contains a certification that there is no just reason for delay.

{¶79} Appellee Giffin claims it was a final order under R.C. 2505.02(B)(4), which states:

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.04(B)(4).

{¶80} In *Geanangel*, we determined that the decision to remove an executor met the requirements under R.C. 2505.02(B)(4):

"The removal of an executor, we find, falls within this category of provisional remedies for which no meaningful or effective remedy could be granted upon an appeal by an executor following final resolution of the estate, since there would no longer be any opportunity for the executor to undertake his duties and functions as executor. It is therefore on the basis of R.C. 2505.02(B)(4) that we conclude that the removal of appellant as executor in the present case constitutes a final appealable order from which appellant may appeal."

*Id.* ¶ 28, quoting *In re Estate of Nardiello*, 10th Dist. No. 01AP-281, 2001-Ohio-4080.

{¶81} Appellee Giffin states the effort to remove a trustee can be equated to the effort to remove an executor.

**{¶82}** We agree. A trustee is a fiduciary just as an executor is a fiduciary. Both actions to remove occurred in probate court proceedings. The action before us is a declaratory judgment action initiated by Appellee Giffin to determine which Amended Trust (One, Two or Three) is the valid trust to use when Marie Mull dies. A provisional remedy is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, * * *." R.C. 2505.02(A)(3). Thus, the act of attempting to remove Appellee Giffin is a provisional remedy.

**{¶83}** In order for a provisional remedy to be considered final (4)(a) and (b), which are quoted above, must be met. Here, the appealing parties are Appellants Charities. If Appellee Giffin is mishandling the trust, Appellants Charities are deprived of a meaningful remedy. If they are beneficiaries, the mishandling of the trust affects what they may be entitled to. They would not get an effective remedy if they have to wait until the entire matter is decided because the removal would be too late.

**{¶84}** Consequently, based on that reasoning, we conclude that the October 23, 2013 order is a final appealable order.

**{¶85}** Our next determination is whether Civ.R. 54(B) is applicable.

**{¶86}** Civ.R. 54(B) states:

When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the

entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Civ.R. 54(B).

**{¶87}** The October 23, 2013 order does not contain Civ.R 54(B) language. Despite Appellants Charities insistence to the contrary, Civ.R. 54(B) is inapplicable. It is well established that "'[a] provisional remedy is a remedy other than a claim for relief. Therefore, an order granting or denying a provisional remedy is not subject to the requirements of Civ.R. 54(B).'" *State ex rel. Butler Cty. Children Servs. Bd. v. Sage*, 95 Ohio St.3d 23, 25, 764 N.E.2d 1027 (2002).

**{¶88}** For the above stated reasons, we hold that the October 23, 2013 order was a final appealable order and Appellant Charities failed to file a timely appeal from that order. Jurisdiction in the court of appeals is based upon a timely filing of a notice of appeal. App.R. 4; *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 141 Ohio St.3d 542, 2015-Ohio-241, 26 N.E.3d 806, ¶ 7. On that basis this assignment of error is dismissed as untimely.

Resolution of Appeal

**{¶89}** In conclusion, the trial court's grant of summary judgment for Appellees Giffin and Quay Mull is hereby affirmed. Assignments of error one, two and three are meritless. The probate court correctly determined that the 1993 Amended Agreement rendered the Family Agreement enforceable, there is no evidence the Family Agreement was revoked during William's lifetime, and the First Amended Trust is the controlling trust. The fourth assignment of error is dismissed as an untimely appeal of the October 23, 2013 order denying Appellants Charities motion seeking removal of Appellee Giffin as trustee.

Waite, J., concurs.

DeGenaro, J., concurs.