[Cite as *V.T. Larney, Ltd. v. Locust St. Invest. Co.*, 2019-Ohio-496.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

V.T. LARNEY, LTD.,

Plaintiff-Appellant,

v.

LOCUST STREET INVESTMENT COMPANY, LP, ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MA 0101**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CV 2052

**BEFORE:**
Kathleen Bartlett, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
REVERSED AND REMANDED

---

*Atty. Robert Goodman*, 720 Youngstown-Warren Road, Suite E, Niles, Ohio 44446, for
Appellant and

*Attys. Elizabeth Farbman and Christine Papa*, 100 East Federal Street, Suite 600,
Youngstown, Ohio 44503 for Appellee.

Dated: February 4, 2019

**BARTLETT, J.**

{¶1} Appellant V.T. Larney, Ltd. appeals the judgment entry of the Mahoning County Court of Common Pleas granting summary judgment in favor of Appellees Locust Street Investment Company, LP ("Locust Street"), Bruce Lev, and Locust Investments, LLC ("Locust Investments") in this breach of contract and unjust enrichment action. In their motion for summary judgment, Appellees argued that the doctrine of merger by deed and the equitable doctrines of laches and estoppel bar Appellant's claims. For the following reasons, the judgment of the trial court is reversed and this matter is remanded for trial.

I.    Facts and Procedural History

{¶2} In 2004, Locust Street was the owner of a 36-unit apartment complex located in Youngstown, Ohio. That same year, Appellant and Locust Street executed a five-year lease for the premises, which contained an option to purchase the premises for $954,000.00, plus seven percent interest accruing from the effective date of the lease ("2004 Lease").

{¶3} Pursuant to subsection (B) of Article 21, captioned "Credit against Purchase Price," Appellant was entitled to a credit for all rental payments under the assumption that the rental payments were paid against the purchase price. According to the terms of Article 21(B), an amortization schedule was attached as "Exhibit B," but no attachment was included in the record. Instead, the parties maintained their own amortization schedules.

{¶4} Based on Appellant's alleged failure to make two lease payments, Appellees filed a breach of contract claim against Appellant in 2008, seeking unpaid rent in the amount of $12,390.74. Appellant filed an answer and counterclaim alleging intentional misrepresentation regarding the quality of the premises and damages for lost equity.

{¶5} The parties participated in a mediation conference on October 30, 2009, which resulted in an agreement to negotiate a new four-year lease for the premises. The parties agreed that the new lease would include an option to purchase the

Case No. 17 MA 0101

premises, and a provision to allow Locust Street to extend the closing date for an additional one-year period.

**{¶6}** Final documents memorializing the settlement were to be prepared on or before November 29, 2009, but were never submitted to the trial court. On December 11, 2009, the trial court issued a judgment entry ordering the parties to submit a settlement entry within 30 days. No settlement entry was filed.

**{¶7}** On March 5, 2010, Locust Street filed a motion to enforce settlement, and, on June 11, 2010, the Magistrate conducted an evidentiary hearing. On June 17, 2010, he issued his decision concluding without explanation that "with respect to Articles 20 and 21, the Magistrate finds that the parties agreed to a purchase price of $849,951.50." (6/21/10 J.E., p. 2). No objections were filed, but, importantly, the Magistrate's decision was never adopted by the trial court.

**{¶8}** On or about July 2, 2010, the new lease was executed with an effective date of August 1, 2010 ("2010 lease"). The 2004 lease was cancelled, effective July 31, 2010. The cancellation of lease reads, in pertinent part, "All rights and obligations of the parties under said lease shall be cancelled and discharged as of said date except those rights and obligations accruing prior to said date and which have not been exercised, performed or discharged." The 2010 lease contained the same provision regarding credits for rental payments towards the purchase price. The 2010 lease was assigned to Locust Investments on June 25, 2014.

**{¶9}** Appellant's option to purchase the premises ripened in 2015. Prior to closing, the parties exchanged correspondence regarding the purchase price, as adjusted by the credits for rental payments.

**{¶10}** Vince Larney, Appellant's sole member owner, attests that he first became aware on August 1, 2014 that Appellees did not intend to reduce the purchase price for the lease payments made under the 2004 Lease from July 1, 2009 to August 1, 2010. Appellees do not dispute that Appellant continued to make rental payments from the commencement of settlement negotiations in 2009 to the execution of the 2010 Lease.

**{¶11}** On August 4, 2014, Appellant sent correspondence to counsel for Appellees and attached Appellant's amortization schedule, which documents monthly payments of $7,000.00 per month from July 1, 2009 to August 1, 2010. Appellant's

amortization schedule shows that as of July 1, 2009, the outstanding amount owed was $849,846.57 and the amount owing on August 1, 2010 was $822,343.72. Appellant's July 1, 2009 calculation closely corresponds with the Magistrate's conclusion that the parties agreed to a purchase price of $849,951.50 at the mediation in 2009.

**{¶12}** On August 14, 2014, counsel for Appellees responded that $849,951.50 was the agreed purchase price for the premises based on the Magistrate's decision and the 2010 Lease. Appellees asserted that the credits at issue were earned under the 2004 lease, which was terminated on July 31, 2010. On June 21, 2015, counsel for Appellant countered that $23,240.04 represented the difference in principal based upon the unaccounted-for payments made under the 2004 Lease.

**{¶13}** On July 1, 2015, counsel for Appellees reiterated that there would be no adjustment to the purchase price. Appellees explained that the adjustment of the purchase price from $854,000.00 to $849,951.50 ($4,048.50) reflected the credits for the lease payments made prior to August 1, 2010. The June 21, 2015 letter also cited additional credits under the 2010 lease that are completely unrelated to the credits for lease payments at issue in this case.

**{¶14}** On July 10, 2015, counsel for Appellant sent a letter to Appellees' counsel recognizing the impasse. The letter suggested that the disputed amount be reserved in escrow, to allow the closing to proceed, and to allow Appellant to file a Civ. R. 60(B) motion.

**{¶15}** On July 14, 2015, counsel for Appellees responded that no disagreement existed insofar as Appellant had agreed to the purchase price when it executed the 2010 lease. Appellees threatened to move for sanctions if a Civ. R. 60(B) motion was filed. The letter further cautioned Appellant that it would be required to vacate the premises and forfeit its considerable investment in the premises if the purchase and sale of the premises did not close on July 31, 2015.

**{¶16}** On July 17, 2015, counsel for Appellant confirmed the purchase of the premises with a closing date of July 31, 2015. However, his correspondence reads, in pertinent part, "Since you are unwilling to resolve this matter prior to closing and have even threatened us with sanctions should we wish to pursue this matter, be advised that we are not waiving our rights to pursue this matter post-closing."

**{¶17}** On July 27, 2015, Appellant purchased the premises without the credit to the purchase price at issue in this case. Article 21(F)(e) of the 2010 lease required Appellant to execute a release to Locust Street of all claims that Appellant had arising from the Lease. No release was executed. Appellant submitted a settlement statement to the U.S. Department of Housing and Urban Development that acknowledged a contract price of $694,279.48.

**{¶18}** Appellant contends that the $849,951.50 purchase price was the amount due on June 1, 2009 under the 2004 Lease, when the parties began settlement negotiations that, roughly one year later, culminated in the execution of the 2010 Lease. Appellant assumed that the $849,951.50 purchase price would be adjusted to reflect the rental payments made under the 2004 Lease while the 2010 Lease was being negotiated from roughly July 1, 2009 to July 1, 2010.

**{¶19}** According to Larney, a total of $34,243.00 was not credited to the purchase price, which consists of unaccounted-for payments and interest overcharges during the term of the 2004 Lease. The amount represents the difference in the final purchase price of $694,279.00 and Appellant's calculation of $660,036.00. Appellees counter that the $849,951.51 purchase price was the amount due and owing on August 1, 2014, the effective date of the 2010 Lease.

**{¶20}** In their motion for summary judgment, Appellees argued that the doctrine of merger by deed and the equitable doctrines of laches and waiver by estoppel bar Appellant's breach of contract and unjust enrichment claims. First, Appellees argued that the July 17, 2015 letter from Appellant's counsel did not constitute a clear manifestation of Appellant's intent to prevent the operation of merger by deed. In the alternative, Appellees claimed that they have suffered material prejudice as a result of Appellant's failure to timely assert its claims. Finally, Appellees argued that Appellant was estopped from asserting its claims because it failed to challenge the Magistrate's Decision by way of a Civ.R. 60(B) motion.

**{¶21}** Without explanation, the trial court entered summary judgment in favor of Appellees. This timely appeal followed.

II.     Standard of Review

**{¶22}** This appeal is from a trial court judgment resolving a motion for summary judgment. An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶23}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶24}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

III.     Law

**{¶25}** The elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and resulting damage to the plaintiff. *Huntington Natl. Bank v. Michel*, 7th Dist. No. 16 CO 0035, 2017-Ohio-9404, ¶ 30.  The construction of a written contract is a matter of law.  *Rizvi v. St. Elizabeth Hosp. Med. Ctr.*, 7th Dist. No. 00CA194, 146 Ohio App.3d 103, 2001-Ohio-3412, 765 N.E.2d 395, citing *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262.

**{¶26}** An unjust enrichment claim is quasi-contractual in nature.  It is an obligation which arises by law to address an instance where a party is the recipient of benefits which that party is not equitably entitled to retain.  *Hummel v. Hummel*, 133 Ohio St. 520, 527, 14 N.E.2d 923 (1938).  The elements of an unjust enrichment claim are: (1) a benefit conferred by plaintiff upon defendant; (2) knowledge by defendant of the benefit; and (3) retention of the benefit by defendant in circumstances where retention without payment to plaintiff is unjust.  *In re Estate of Udell v. Seely*, 7th Dist. No. 14 MA 0157, 2016-Ohio-6974, 71 N.E.3d 724, ¶¶ 8-9.

II.     Analysis

The trial court erred as a matter of law when it granted Defendants-Appellees' Motion for Summary Judgment and dismissing claims by failing to construe the evidence most strongly in favor of the non-moving party, Plaintiff-Appellant, V.T. Larney, LTD, without considering all the evidence in the record. (T.d.24, Judgment Entry dated May 10, 2017).

**{¶27}** When a deed is delivered and accepted without qualification pursuant to an agreement in Ohio, no cause of action upon the prior agreement generally exists thereafter. *Miller v. Cloud*, 7th Dist. No. 15 CO 0018, 2016-Ohio-5390, 76 N.E.3d 297, ¶¶ 71-72, *Fuller v. Drenberg*, 3 Ohio St.2d 109, 209 N.E.2d 417 (1965), paragraph one of the syllabus.  The purchase contract merges into the deed.  *Miller* at ¶ *72,* citing 37 *Robinwood Assoc. v. Health Industries, Inc.*, 47 Ohio App.3d 156, 157–158, 547 N.E.2d 1019 (1988).  However, when the deed is accepted under protest and with a reservation

of rights, it is typically excepted from the merger doctrine. *Id.* citing Rockford *Homes, Inc. v. Handel*, 5th Dist. No. 07CA006, 2007-Ohio-2581, ¶ 31.

{¶28} Merger by deed has been described as an application of the contract doctrine of integration. Under that doctrine, all prior documents are considered to be integrated into the final contract, and only the provisions contained in the final contract are part of the agreement. The doctrine is the combined result of the parol evidence rule and the rule of interpretation, which seeks to determine the intention of the parties. In other words, if it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions continue. *Newman v. Group One*, Fourth Dist. No. 04CA18, 2005-Ohio-1582, ¶ 13 citing 14 Powell on Real Property (1995) 81A-136, Section 81A.07(1)(d). In his treatise, Powell further observed:

> Similarly, the merger doctrine should only be applied as a canon of construction that attempts to arrive at the true intention of the parties to a deed. Thus, if there is a specific survival clause in the prior contract of sale, or in a contemporaneous document delivered at the same time as the deed, which states that its provisions are to survive the delivery of the deed, then the merger doctrine does not apply. . . .

*Id.*, citing 14 Powell on Real Property (1995) 81A-136, Section 81A.07(1)(d).

{¶29} Appellant contends that counsel's July 17, 2015 letter coupled with Appellant's refusal to sign the general release constitutes a clear manifestation of the intent to prevent merger. Appellees cite *Suermondt v. Lowe*, 165 Ohio App.3d 427, 2006-Ohio-224, 846 N.E.2d 910, for the proposition that the July 17, 2015 letter is insufficient to establish a "reservation of rights" as that term has been defined by Ohio courts.

{¶30} In *Suermondt,* the plaintiff purchased her grandmother's farm, less an 18-acre tract, pursuant to an option to purchase agreement that included the entire farm. After the option to purchase was recorded, but before it was exercised, the plaintiff's grandmother transferred the 18-acre tract by quit claim deeds to the plaintiff's aunt and uncle.

Case No. 17 MA 0101

**{¶31}** Prior to purchasing her grandmother's farm, the plaintiff filed an affidavit of facts pursuant to R.C. 5301.252 stating that she continued to claim the right to purchase the entire farm based upon the previously executed option to purchase, notwithstanding the conveyance by her grandmother of an 18-acre tract of land to the plaintiff's aunt and uncle. She specifically stated that her acquisition of the remainder of the farm would not result in any merger or estoppel, nor would it extinguish her right to purchase the entire property described in an option to purchase. *Id.* at ¶ 11.

**{¶32}** Appellees contend that Ohio law requires a clear manifestation of intent to prevent merger as demonstrated by the plaintiff in *Suermondt*, supra. Appellees argue that Appellant's failure to specifically mention merger is fatal to its reservation of rights argument.

**{¶33}** There are no genuine issues of material fact with respect to the application of merger by deed. There was a specific survival clause in the cancellation of the 2004 Lease relating to the lease payments at issue in this case.[1] The cancellation of lease, dated July 31, 2010, reads, in pertinent part, "All rights and obligations of the parties under said lease shall be cancelled and discharged as of said date except those rights and obligations accruing prior to said date and which have not been exercised, performed or discharged."

**{¶34}** Further, the July 17, 2015 letter coupled with Appellant's refusal to sign the general release constitutes a clear manifestation of Appellant's intent to prevent merger as a matter of law. The letter specifically states, "Since you are unwilling to resolve this matter prior to closing and have even threatened us with sanctions should we wish to pursue this matter, be advised that we are not waiving our rights to pursue this matter post-closing."

**{¶35}** Finally, merger by deed should only be applied as a canon of construction to arrive at the true intention of the parties. Appellees should not be permitted to invoke the doctrine where Appellant clearly manifested its intent to pursue, post-closing, Appellant's failure to credit lease payments made during the negotiation of the 2010 Lease.

---

[1] This conclusion relates solely to the "clear manifestation" element of merger by deed. It is the role of the jury to determine whether the obligations accruing prior to the cancellation date of the 2004 Lease have been performed or discharged.

{¶36} Appellees were on notice that Appellant intended to retain the right to argue that credits should have been made to the purchase price following the sale of the premises. Appellees could have agreed to postpone the closing date in order to resolve the issue by way of a Civ.R 60(B) motion, but chose instead to push the deal through despite the unresolved issue. Unlike *Suermondt*, the dispute here does not impact the title to the property, and, therefore, Appellant was under no obligation to comply with the requirements of R.C. 5301.252, captioned "Affidavits on facts relating to title." Finally, Appellees' reliance on the HUD statement is misplaced. The document accurately reflects the amount paid under the contract on the closing date as required by federal law. For the foregoing reasons, the trial court erred to the extent that it concluded that merger by deed barred Appellant's claims.

{¶37} Turning to Appellees' equitable arguments, laches consists of four elements: (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). All four elements must exist for laches to apply.

{¶38} The party invoking the doctrine must show the delay caused material prejudice. *Miller v. Cloud*, 7th Dist. No. 15 CO 0018, 2016-Ohio-5390, 76 N.E.3d 297, ¶¶ 85-86, citing *Thirty-Four Corp. v. Sixty–Seven Corp.,* 15 Ohio St.3d 350, 354, 474 N.E.2d 295 (1984). Material prejudice requires actual proof that evidence was lost or the moving party suffered a detriment. *RHDK Oil & Gas, L.L.C. v. Dye*, 7th Dist. No. 14 HA 0019, 2016-Ohio-4654, ¶ 43, appeal not allowed, 147 Ohio St.3d 1506, 2017-Ohio-261, 67 N.E.3d 823, ¶ 43 (2017), see also *State ex rel. Donovan v. Zajac*, 125 Ohio App.3d 245, 250, 708 N.E.2d 254, 258 (11th Dist.1998).

{¶39} A decision whether or not to apply the defense of laches is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *DeRosa v. Parker*, 7th Dist. No. 10 MA 84, 197 Ohio App.3d 332, 2011-Ohio-6024, 967 N.E.2d 767, ¶ 49. Abuse of discretion is more than an error of law or judgment; instead it is a finding that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶40} Appellees have not demonstrated material prejudice. They have neither demonstrated a loss of evidence nor articulated a change in their position they would have undertaken or not undertaken had Appellant demanded credit for the lease payments made from June 2009 to July 2010 prior to the execution of the 2010 Lease. Appellees simply assert that "if it is allowed, [Appellant's] claims will materially prejudice [Appellees.]" (Appellees' Brf., p. 14). They rely exclusively on the passage of time despite the fact that all four of the elements are necessary to establish laches. Consequently, the trial court acted unreasonably in concluding that Appellees suffered material prejudice.

{¶41} Waiver by estoppel exists when the acts and conduct of a party are inconsistent with his intent to claim a right. Where those acts have misled the opposing party to his prejudice, the party is estopped from enforcing the right. *Merriner v. Goddard*, 7th Dist. No. 08-MO-2, 2009-Ohio-3253, ¶ 99. In other words, waiver by estoppel relies upon a party's inconsistent conduct, rather than his or her intent, to establish a waiver of rights. *Phillips v. Farmers Ethanol, L.L.C.*, 7th Dist. No. 12 JE 27, 2014-Ohio-4043, ¶ 29, cause dismissed, 141 Ohio St.3d 1480, 2015-Ohio-658, 25 N.E.3d 1085, ¶ 29. An appellate court reviews a lower court's application of the doctrine of equitable estoppel for abuse of discretion. *DeRosa*, supra, at ¶ 50.

{¶42} Appellees argue that Appellant should be estopped from asserting his breach of contract and quasi-contractual claims because Appellant entered into the settlement agreement, did not seek clarification of the Magistrate's decision by way of Civ.R. 60(B) prior to closing, and executed the purchase agreement for the premises in 2015. Appellees characterize each of these acts as conduct inconsistent with the intention to challenge the purchase price. Of course, Appellees omit the fact that Appellant became aware of Appellees' failure to credit lease payments made under the 2004 Lease on August 1, 2014 and has consistently asserted its right to credit for payments made under the 2004 Lease from that day forward. Appellees' reliance on Appellant's failure to file a Civ. R 60(B) motion is particularly disingenuous, as it is the very same Civ.R. 60(B) motion that Appellees claimed would be cause for sanctions prior to closing. We must also note that, as the trial court did not adopt the magistrate's decision, this decision was not binding on the parties. Because Appellant consistently

asserted its right to credit for payments made under the 2004 Lease from June 2009 to July 2010, the trial court was unreasonable in concluding that the doctrine of equitable estoppel barred Appellant's claims.

III.    Conclusion

**{¶43}** Because the parties maintained separate amortization schedules, Appellant did not discover that Appellees did not credit payments made under the 2004 Lease to the purchase price for the premises until 2015. When Appellant discovered the conflict, it consistently asserted its right to credits for the lease payments, and clearly manifested its intent that the issue regarding credits would be pursued after closing. Appellees have failed to demonstrate that they have suffered any material prejudice or that they were misled by Appellant's conduct. For the foregoing reasons, Appellant's assignment of error has merit and the judgment of the trial court is reversed and this matter is remanded for trial.

**Waite, P.J., concurs.**

**Robb, J., concurs.**

---

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**